**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | | |
|---|---|---|
| IN RE: | § | |
| | § | **CASE NO. 24-41929** |
| **MACADAMIA BEAUTY, LLC,** | § | |
| | § | |
| Debtor. | § | **Chapter 11 (Subchapter V)** |

**DEBTOR'S EXPEDITED MOTION FOR (I) ORDER (A) APPROVING BIDDING
PROCEDURES FOR THE SALE OF ALL OR SUBSTANTIALLY ALL OF DEBTOR'S
ASSETS, (B) APPROVAL OF DESIGNATION OF STALKING HORSE BIDDER AND
BID PROTECTIONS, (C) APPROVAL OF PROCEDURE TO ASSUME AND ASSIGN
EXECUTORY CONTRACTS AND UNEXPIRED LEASES; AND (D) SCHEDULING
FINAL SALE HEARING AND APPROVING FORM AND MANNER OF NOTICE
THEREOF; AND (II) ORDER AUTHORIZING AND APPROVING THE SALE OF
ASSETS FREE AND CLEAR OF LIENS AND OTHER INTERESTS**

Macadamia Beauty, LLC, debtor and debtor in possession in the above-captioned case

(the "Debtor"), by and through its undersigned counsel, hereby files this motion (the "Motion"),

pursuant to sections 105(a), 362, 363, and 365 of title 11 of the United States Code, 11 U.S.C. §§

101-1532 (the "Bankruptcy Code"), Rules 2002, 4001, 6006, 9008 and 9014 of the Federal Rules

of Bankruptcy Procedure (the "Bankruptcy Rules"), for (I) entry of an order (the "Bidding

Procedures Order"), *inter alia*, (a) approving bidding procedures (the "Bidding Procedures") in

connection with the sale of all or substantially all of the Debtor's assets; (b) approval of the

designation of a stalking horse bidder and bid protections to be provided to the stalking horse

bidder; (c) approval of the procedure to assume executory contracts and unexpired leases and

assign same to the purchaser of the Debtor's assets, (d) scheduling a final sale hearing (the "Sale

Hearing") to consider entry of an order approving the sale of the Debtor's assets, and (e) approving

the form and manner of notice of the auction for the assets (the "Auction") and the Sale Hearing

(the "Sale Notice"); and (II) entry of an order authorizing and approving the sale of all or

substantially all of the Debtor's assets free and clear of liens, encumbrances and other interests. In support of this Motion, the Debtor respectfully represents as follows:

## I.
## STATUS OF THE CASE AND JURISDICTION

1.      On August 19, 2024 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11, Sub-Chapter V of the Bankruptcy Code (the "Bankruptcy Case").

2.      The Debtor continues in possession of its properties and continues to operate and manage its business as a debtor in possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

3.      On August 22, 2024, the United States Trustee filed a notice [Doc. No. 22] that Katharine Clark was appointed Subchapter V Trustee in the case.  This Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 1334 and 157(b). This is a "core" proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (O).

4.      Venue is proper in this Court pursuant to 28 U.S.C. § § 1408 and 1409.

5.      The statutory bases for the relief requested herein are Sections 105(a), 362, 363, and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 4001, 6006, 9008 and 9014.

## II.
## BACKGROUND

### A.      Factual Background.

6.      The Debtor is in the business of selling and marketing premium liquid haircare products.

7.      A more detailed factual background of the Debtor's business and operations, including the events leading up to the filing of this Chapter 11 Case, is more fully set forth in the

*Debtor's Amended Subchapter V Plan of Reorganization* (the "Plan") [1] filed on April 9, 2025 [Doc.

No. 158], which is incorporated herein by this reference.

8.     As part of the Plan, the Debtor is pursuing a sale of substantially all of its assets,

primarily consisting of inventory, intellectual property, goodwill, accounts receivable, customer

lists, work in progress and finished goods, as well as miscellaneous furniture and equipment (the

"Assets").  The Debtor's CEO and his team have undertaken efforts to market the Assets to other

parties in the industry.

**B.     Proposed Sale of the Assets.**

9.     The Debtor proposes the following timeline to effectuate the sale of the Assets,

subject to the Court's availability and wishes:

| Event | Proposed Date[2] |
|---|---|
| Hearing to approve Bid Procedures, designation of Stalking Horse Bidder and Bid Protections | April 24, 2025 |
| Deadline to file the Stalking Horse Asset Purchase Agreement | April 21, 2025 |
| Deadline to file and serve Notice of Cure Amounts | April 22, 2025 |
| Deadline to object to proposed Cure Amounts | April 29, 2025 |
| Deadline for Potential Bidders to submit Bids | April 30, 2025 |
| Deadline to file and serve notice of Qualified Bidders | May 2, 2025 |
| Auction and Selection of Successful Bidder | May 5, 2025 |
| Deadline to file & serve Notice of Successful Bid | May 6, 2025 |
| Deadline to file & serve Objections to Motion | May 6, 2025 |
| Hearing on Sale Motion | May 13, 2025 |
| Deadline to close sale transaction | May 30, 2025 |

---

[1] Defined terms not otherwise defined herein shall have the meaning given to them in the Plan.

[2] These dates are proposed dates only and subject to change by the Bankruptcy Court; and all stated times are Central Time.

10.     The Debtor seeks the authority to conduct an auction for bids (each, a "Bid") for the purchase of substantially all of the Debtor's assets. A copy of the proposed form of the order approving the Bidding Procedures (the "Bidding Procedures Order") is attached as **Exhibit A** and is incorporated herein.

### III.
### GROUNDS FOR APPROVAL OF THE MOTION

**A.    Section 363(b) of the Bankruptcy Code Authorizes the Sale of the Assets Under the Circumstances Present Here.**

11.     Pursuant to Section 363 of the Bankruptcy Code, a debtor in possession may sell property of its estate outside of the ordinary course of its business, subject to the approval of the court after notice and a hearing. 11 U.S.C. § 363(b)(1); *Cajun Elec. Power Coop., Inc. v. Official Comm. of Unsecured Creditors*, 119 F.3d 349, 354 (5th Cir. 1997). In the Fifth Circuit and elsewhere, it is well settled that a decision to sell assets outside the ordinary course of business, prior to confirmation of a plan, be based upon the sound business judgment of the debtor. *See, e.g., Institutional Creditors of Continental Airlines, Inc. v. Cont'l Air Lines, Inc.*, 780 F.2d 1223, 1226 (5th Cir. 1986); *In re Martin*, 91 F.3d 389 (3d Cir. 1996), citing, *In re Schipper*, 933 F.2d 513 (7th Cir. 1991); *Stephens Indus., Inc. v. McClung*, 789 F.2d 386 (6th Cir. 1986); *In re Lionel Corp.*, 722 F.2d 1063 (2d Cir. 1983).

12.     In light of tariffs, the current economic uncertainty and Rosenthal's objections to funding by insiders, raising funds for a reorganization is not viable in the permitted time frame. As a result, an orderly marketing and sale of the Assets is necessary to maximize the value of the Assets in the best interest of the estate and creditors. As discussed elsewhere in this Motion, the Debtor will be providing adequate and reasonable notice of the opportunity to bid on the Assets and of the opportunity to object to the sale of the Assets to all interested parties. *See, e.g., Folger*

*Adam Security Inc. v. DeMatteis/MacGregor*, 209 F.3d 252, 265 (3d Cir. 2000) (stating that notice is sufficient if it includes "the time and place of any public sale, the terms and conditions of any private sale, states the time for filing objections and, if real estate is being sold, provides a general description of the property"); *In re WBQ Partnership*, 189 B.R. 97, 103 (Bankr. E.D. Va. 1995) ("'notice is sufficient if it includes the terms and conditions of the sale, if it states the time for filing objections'") (*quoting In re Karpe*, 84 B.R. 926, 929 (Bankr. M.D. Pa. 1988)).

13.     The Bidding Procedures proposed herein will provide for an open and competitive bidding process for the Assets. The Debtor is proceeding in good faith and will make a showing at the Sale Hearing that the purchaser of the Assets has acted in good faith.

14.     Based on the foregoing, the Debtor submits that the disposition of the Assets is justified by sound business reasons and is in the best interests of the Debtor and its estate. Accordingly, pursuant to Section 363(b) of the Bankruptcy Code, the Debtor requests approval of the sale of the Assets.

**B.     Sale of the Debtor's Assets Free and Clear of Liens.**

15.     Pursuant to Section 363(f) of the Bankruptcy Code, a debtor in possession may sell property "free and clear of any interest in such property of an entity other than the estate" if any one of the following conditions is satisfied:

(a)     applicable non-bankruptcy law permits the sale of such property free and clear of such interest;

(b)     such entity consents;

(c)     such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

(d)     such interest is in bona fide dispute; or

(e)     such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).

16.     Section 363(f) is drafted in the disjunctive. Thus, satisfaction of any of the requirements enumerated therein will suffice to warrant the sale of assets free and clear of all interests. *See In re Gulf States Steel, Inc. of Alabama,* 285 B.R. 497, 506 (Bankr. N.D. Ala. 2002) ("Since the five conditions listed in 11 U.S.C. § 363(f) are phrased in the disjunctive, property may be sold free and clear of interests if any one of the five conditions is satisfied.") *See also Citicom Homeowners Servs., Inc. v. Elliot,* 94 B.R. 343, 345 (E.D. Pa. 1988).

17.     The Debtor submits that with respect to an interest subject to Section 363(f), at least one of the five conditions in Section 363(f) of the Bankruptcy Code will be satisfied. The Debtor accordingly requests authority to sell and convey its Assets free and clear of all interests.

18.     Furthermore, the Debtor proposes that all liens, claims and encumbrances, including those of Rosenthal, asserted against the Assets be transferred and attach to the sale proceeds.  All liens on the Assets will be satisfied or will attach to the proceeds of the sale of the Assets with the same force, effect and priority as such liens have on the Assets, subject to the rights and defenses, if any, of the Debtor and any party in interest with respect thereto.

19.     The Debtor has conducted a UCC search to determine possible lienholders of the Debtor's Assets in conjunction with the proposed sale of the Assets. The Debtor has served such purported lienholders notice of this Motion, and will serve such parties with notice of any order approving the relief requested by this Motion. Accordingly, this Court should approve the sale of the Assets to the Successful Bidder (defined in the Bidding Procedures), free and clear of interests under Section 363(f) of the Bankruptcy Code.

**C.      The Purchaser of the Assets is Entitled to Good Faith Protections of Section 363(m).**

20.     Section 363(m) of the Bankruptcy Code provides:

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. §363(m).

21.     While the Bankruptcy Code does not define "good faith," the Third Circuit in *Abbotts Dairies,* has stated:

> [t]he requirement that a Buyer act in good faith ... speaks to the integrity of his conduct in the course of the sale proceedings. Typically, the misconduct that would destroy a Buyer's good faith status at a judicial sale involves fraud, collusion between the Buyer and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders.

788 F.2d at 147 (citations omitted). *See also In re Miami General Hospital, Inc.,* 81 B.R. 682, 688 (S.D. Fla. 1988) ("The misconduct at a judicial sale that would destroy a buyer's good faith 'involved fraud, collusion between the Buyers and other bidders or the trustee, or an attempt to take generally unfair advantage of other bidders.'") *(quoting Abbotts Dairies,* 788 F.2d at 147).

22.     Moreover, a party would have to show fraud or collusion between the buyer and the debtor-in-possession or trustee or other bidders in order to demonstrate a lack of good faith. *See In re Colony Hill Assocs.,* 111F.3d269, 276 (2d Cir. 1997) ("Typically, the misconduct that would destroy a Buyer's good faith status at a judicial sale involves fraud, collusion between the Buyer and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders.").

23.     The Debtor intends to make an appropriate showing at the Sale Hearing that the resulting asset purchase agreement presented for approval is the result of a negotiated, arms' length transaction between the Debtor and the Successful Bidder and the parties at all times acted

in good faith.  The Debtor thus requests that the Court find that the Successful Bidder will be purchasing the Assets in good faith within the meaning of Section 363(m) of the Bankruptcy Code.

**IV.**
**THE COURT SHOULD AUTHORIZE THE DEBTOR'S**
**IMPLEMENTATIONOF THE BID SOLICITATION AND SALE PROCESS**

**A.**     **The Court Should Approve the Designation of a Stalking Horse Bidder and the Break-Up Fee.**

24.     In the weeks leading up to the filing of this Motion, the Debtor's CEO has actively and diligently marketed the Assets.  As of the filing of this Motion, two (2) LOIs were submitted to the Debtor.  The Debtor has determined, in its reasonable business judgment, that a sale of the Assets at this time with a traditional "stalking horse" bidder is the only viable course within the timeline permitted.

25.     Out of seven (7) conversations and two (2) proposed LOIs, the Debtor has agreed with one party to serve as the stalking horse bidder.  Accordingly, the Debtor hereby seeks approval from the Court for the designation of a stalking horse bidder (the "Stalking Horse Bidder") to aid the sale process.  The Debtor seeks to designate RCB Equities #1, LLC ("RCB") to serve as the Stalking Horse Bidder.  RCB has tendered its initial binding Bid (the "Stalking Horse Bid") with an LOI (the "Stalking Horse LOI") with terms acceptable to the Debtor.  RCB has agreed to serve as the Stalking Horse Bidder provided that the Court approves the break-up fee proposed below.  RCB is not an insider of the Debtor and is not related to the Debtor.

26.     The Debtor proposes to provide the Stalking Horse Bidder bid protection in the form of a break-up fee of $45,000 plus up to another $45,000 in reimbursement for attorneys' fees

and expenses, proof of which will be submitted to Debtor's counsel for approval (the "Break-Up Fee") offered in the Stalking Horse Bid.

27.     The Break-up Fee is payable if the Stalking Horse Bidder is not selected as the Successful Bidder at the conclusion of the Auction according to the terms outlined in the LOI.

28.     The ability of the Debtor to offer the Break-Up Fee to the Stalking Horse Bidder is beneficial to the Debtor's estate and creditors because the Debtor can provide the incentive required to induce a bidder to submit or increase its Bid.  Thus, even if the Stalking Horse Bidder is awarded a Break-Up Fee because the Stalking Horse Bidder does not become the Successful Bidder, the Debtor and the estate will have benefited from the higher floor established by such Stalking Horse Bid.

29.     Pursuant to the Bidding Procedures, potential bidders wishing to participate in the Auction must, among other requirements, make its initial Bid with a purchase price that exceeds the purchase price in the Stalking Horse Bid by no less than the Break-Up Fee.

30.     Break-up and other termination fees are a normal, and in some cases necessary, component of sales outside the ordinary course of business under Section 363 of the Bankruptcy Code. *See, In re ASARCO LLC*, Case No. 05-21207 (RSS) (Bankr. S.D. Tex. July 1, 2008); *In re Integrated Resources, Inc.*, 147 B.R. 650, 660 (S.D.N.Y. 1992) (noting that Break-up fees may be legitimately necessary to convince a single "white knight" to enter the bidding by providing some form of compensation for the risk it is undertaking); *In re 995 Fifth Ave. Assoc., L.P.*, 96 B.R. 24, 28-9 (Bankr. S.D.N.Y. 1989) (payment of $500,000 Break-up fee to outbid contract vendee following sale of debtor's property was not unreasonable absent evidence that fee chilled bidding).

31.    In considering whether to approve a break-up fee, courts generally consider the following three factors: (i) the relationship between the initial bidder and the seller; (ii) whether the fee is designed to encourage bidding; and (iii) the size of the fee in relation to the purchase price. *See, In re Integrated Resources*, 147 B.R. at 657-63.  Some courts have decided that an application for a break-up fee should not be treated any differently from other applications for administrative expenses under Section 503(b)(1)(A). These courts hold that the determination of whether break-up fees or expenses are allowable under Section 503(b)(1)(A) is made in reference to general administrative expense jurisprudence, and "depends upon the requesting party's ability to show that the fees were actually necessary to preserve the value of the estate." *Calpine Corporation v. O'Brien Environmental Energy, Inc. (In re O'Brien Environmental Energy, Inc.)*, 181 F.3d 527, 532 (3d Cir. 1999).

32.    This prong of the analysis can be presumed in a sale situation between a debtor and a third party. The *O'Brien* court stated, "[w]e assume that bidding at the sale of O'Brien's assets constituted a transaction with the debtor-in possession for purposes of § 503(b)(1)(A)." *Id.* at 533. Similarly, bidding at a sale of the debtor's assets, where the seller is the debtor-in-possession, constitutes a transaction that may entitle a party to an administrative expense.

33.    Approval of a break-up fee in connection with the sale of significant assets in a situation such as the Debtor faces here is an established practice that will facilitate the Debtor's efforts to assure a sale to a contractually-committed bidder at a price the Debtor believes is fair, while at the same time providing the Debtor with the potential of even greater benefit to the estate.

34.    A break-up fee which constitutes a fair and reasonable percentage of the proposed purchase price and which is reasonably related to the risk, effort, and expenses of the prospective purchaser is generally permissible. *See, e.g., In re 995 Fifth Ave. Assoc.*, 96 B.R. at 28. *Accord In*

*re Integrated Resources, Inc.*, 147 B.R. at 662 (Break-up fee reasonable percentage of proposed purchase price and in accord with industry averages).

35.    In the present case, the Break-Up Fee payable in the event that the Stalking Horse Bidder is outbid at the Auction is proposed to be 2.5% of the transaction price and an additional up to 2.5% to cover reasonable and customary documented fees, a maximum of 5.0% of the purchase. This percentage is of the same order of magnitude as break-up fees approved in other cases. *See e.g., In re VarTec Telecom, Inc.,* Case No. 04-81694 (SAF) (Bankr. N.D. Tex., November 23, 2004 and April 15, 2005) (court approved a break-up fee of approximately 3% with respect to two sales of assets); *In re Ameriserve,* Case No. 00-0358 (PJW) (Bankr. D. Del., September 27, 2000) (Court approved a break-up fee of 3.64% or $4,000,000 in connection with $110,000,000 sale); *In re Montgomery Ward Holding Corp., et al.,* Case No. 97-1409 (PJW) (Bankr. D. Del., June 15, 1998) (Court approved termination fee of 2.7%, or $3,000,000, in connection with $110,000,000 sale of real estate assets); *See, e.g., Consumer News & Business Channel Partnership v. Financial News Network, Inc.* (*In re Financial News Network, Inc.*), 980 F.2d 165, 167 (2d Cir. 1992) (noting without discussion $8.2 million Break-up fee on $149.3 million transaction (5.5% of consideration offered)); *Cottle v. Stores Communications*, 849 F.2d 570, 578-79 (11th Cir 1988) (approving $29 million fee on $2.5 billion transaction, 1.16%; *see also LTV Aerospace & Defense Co. v. Thomson-CSF, S.A. (In re Chateaugay Corp.)*, 1998 B.R. 848, 861 (S.D.N.Y. 1996) (enforcing $20 million "reverse Break-up fee" payable to debtor on $450 million offer (4.4% of consideration)). The Debtor believes that the ability to offer a Break-Up Fee to induce an interested party to submit a significant and valued Bid in advance of the Auction, and thereby establish a committed baseline, or floor, upon which all other potential bidders can evaluate whether it is willing to overbid, is beneficial to the Debtor's estate and its

creditors. If any such Break-Up Fee is ultimately payable to the Stalking Horse Bidder -- by definition, because the Debtor has received a higher or otherwise better offer and has closed on a superior transaction -- the Stalking Horse Bid will have benefited the Debtor's estate, particularly in the context of the total consideration received.

36.     The Debtor submits that approval of the designation of the Stalking Horse Bidder and the proposed Break-up Fee will not chill bidding and is reasonable and therefore meets the requirements of the business judgment rule. The Debtor also submits that the Break-up Fee as proposed is appropriate in this case.

**B.      The Proposed Bidding Procedures Are Appropriate Under the Circumstances.**

37.     In view of the above-described circumstances, the Debtor requests that the Court approve its proposed Bidding Procedures for the sale of the Assets in substantially the form annexed hereto as **Exhibit B** and incorporated herein, with a final Sale Hearing to occur on or before May 13, 2025, as the Court's calendar may permit.[3]

38.     The salient terms and provisions of the Bidding Procedures are summarized below and should be read and considered in conjunction with the timetable outlined in Paragraph 9 above.  Capitalized terms not otherwise defined hereunder shall have the same meaning given to them in the proposed Bidding Procedures attached hereto as Exhibit B.

      a.   Qualification. In order for a party to submit a bid for the Assets and participate at the Auction (a "Potential Bidder"), a Potential Bidder must meet the following qualifications.

      b.   Bid Requirements. A Bid is a signed letter from a Potential Bidder offering to purchase the Assets that: (1) provides for terms that the Debtor determines are higher and better than that of the Stalking Horse Bid (defined hereinbelow); and (2) are not subject to any due diligence contingency and is irrevocable until

---

[3] The proposed form of Bidding Procedures Order contains proposed dates from the Debtor. These dates are subject to the approval by, and availability of, the Court and are subject to change.  The Debtor proposes that the final Sale Hearing be held contemporaneously with the hearing to confirm the Plan.

two (2) business days after the earlier of (i) the closing of the sale of the Assets, whether or not the sale is to such bidder, or (ii) 45 days after the conclusion of the Sale Hearing.

c.   Required Supporting Materials. A Potential Bidder shall accompany its Bid with:

- an asset purchase agreement substantially in the same form of the Stalking Horse APA with respect to all material terms and conditions therein except as modified as to price;

- a redline comparison of the Potential Bidder's asset purchase agreement to the Stalking Horse APA;

- the purchase price under the asset purchase agreement must be at least $100,000.00 over the purchase price of the Stalking Horse APA; and,

- written evidence of available cash, a commitment for financing or ability to obtain a satisfactory commitment if selected as the Successful Bidder, and such other evidence of ability to timely consummate the transaction as the Debtor may reasonably request.

d.   Good Faith Deposit. In order to participate in the Auction a Potential Bidder must accompany its Bid with a good faith deposit equal to 10% of the cash purchase price offered in its Bid in the form of a wire transfer or certified or cashier's check.

e.   Qualified Bidder. A Potential Bidder who timely submitted a Bid by the Bid Deadline that the Debtor determines satisfies subparagraphs (b)-(d) hereinabove shall become a "Qualified Bidder" eligible to participate at the Auction. The Debtor will file and serve (including on all parties who submitted a Bid) a Notice of Qualified Bidders within two days after the Bid Deadline. Only those Qualified Bidders identified by the Debtor on the Notice of Qualified Bidders shall be permitted to attend and participate at the Auction.

f.   Baseline Bid. As soon as practicable after the Bid Deadline, the Debtor may select the Bid that will serve as the "Baseline Bid" for the Auction, and may file with the Court a notice of the Debtor's selection of the Baseline Bid for the Auction.

g.   Bidding at the Auction. The Debtor retains discretion with respect to how to conduct the Auction if Bids are received on differing packages or configurations of the Assets.

h.  <u>Bidding Increment</u>. The minimum Bidding Increment at the Auction shall be announced at the commencement of the Auction and shall be in such amount as the Debtor determines is appropriate. The Stalking Horse Bidder shall be entitled to credit bid the amount of its Break-up Fee at the Auction.

i.  <u>Designation of Successful Bidder</u>. After all Qualified Bidders have made their last bids, immediately prior to the conclusion of any Auction, the Debtor will: (a) review each Bid made at the Auction on the basis of financial and contractual terms and such factors relevant to the sale process, including those factors affecting the speed and certainty of consummating the proposed sale; (b) in the Debtor's discretion, identify the highest or otherwise best bid for the Assets (the "<u>Successful Bid</u>") and the next highest or otherwise best bid as a back-up (the <u>Back-Up Bid</u>"); and (c) notify all Qualified Bidders participating in the Auction, prior to its adjournment, of the names of the Qualified Bidders making the Successful Bid (the "<u>Successful Bidder</u>") and the Back-Bid (the "<u>Back-Up Bidder</u>"), and the amount and other material terms of the Successful Bid and the Back-Up Bid. At the closing of the transaction contemplated by the Successful Bid, the Successful Bidder will be entitled to a credit for the amount of its Good Faith Deposit.

j.  <u>Return of Deposits</u>. The Good Faith Deposit of a Qualified Bidder shall be returned within three (3) business days of the earlier of (a) the closing of the sale of the Assets, or (b) 45 days after the Sale Hearing.

39.  The Bidding Procedures set forth a flexible process by which the Debtor will be soliciting bids for the Assets. This flexible process will allow the Debtor to maximize the value of the Assets given the constraints and time pressure the Debtor currently faces.

40.  The Debtor expressly reserves the right to modify the relief requested in this Motion prior to or at the applicable Hearings, including modifying the proposed Bidding Procedures. Moreover, the Debtor reserves the right to adjourn the Auction or the Sale Hearing if the Debtor determines that such action will maximize value to the Debtor's estate for the benefit of all creditors.

**C.  <u>Assumption and Assignment of Executory Contracts.</u>**

41.     As part of the sale transaction the Debtor requests approval of a procedure for the assumption and then assignment of executory contracts and unexpired leases (collectively, "Executory Contracts") to the Successful Bidder.

42.     Under Section 365(a), a debtor "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a). Section 365(b)(1), in turn, codifies the requirements for assuming an unexpired lease or executory contract of a debtor, providing that:

> (b)(1)  If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee –
>
> (A)   cures, or provides adequate assurance that the trustee will promptly cure, such default ... ;
>
> (B)   compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and
>
> (C)   provides adequate assurance of future performance under such contract or lease.

11 U.S.C. § 365(b)(l).

43.     Section 365(f)(2) of the Bankruptcy Code provides, in pertinent part, that: the trustee may assign an executory contract or unexpired lease of the debtor only if –

> (A)   the trustee assumes such contract or lease in accordance with the provisions of this section; and
>
> (B)   adequate assurance of future performance by the assignee of such contract or lease is provided, whether or not there has been a default in such contract or lease.

U.S.C. § 365(f)(2).

44.     Although Section 365 of the Bankruptcy Code does not set forth standards for courts to apply in determining whether to approve a debtor-in-possession's decision to assume an executory contract, it is well established that the decision to assume or reject an executory contract or unexpired lease is a matter within the "business judgment" of the debtor. *See In re Taylor,* 913 F.2d 102 (3d Cir. 1990); *Sharon Steel Corp. v. Nat'/ Fuel Gas Distrib. Corp.,* 872 F.2d 36 (3d Cir. 1989); *In re Gardinier, Inc.,* 831 F.2d 974, 975 n.2 (11th Cir. 1987). Accordingly, assumption or rejection of any executory contract is appropriate where the assumption would benefit the estate or the rejection would allow the trustee to avoid burdensome obligations previously incurred by the Debtor. *In re Diamond Mfg. Co., Inc.,* 164 B.R. 189, 198 (Bankr. S.D. Ga. 1994). *See also Sharon Steel,* 872 F.2d at 40.

45.     The assumption, assignment, and sale of the Executory Contracts is an integral part of the disposition of the Assets and, as stated above, such disposition provides the maximum available benefit to the Debtor's estate.

46.     As set forth in the summary of the sale timeline hereinabove, prior to the Bid Deadline, the Debtor will file and serve a Notice of Cure Amount (a proposed form is attached hereto as **Exhibit C**) to the nondebtor parties to all Executory Contracts.  The nondebtor parties to the Executory Contracts will have the opportunity to object to the proposed cure amounts ("Cure Amount").   To the extent no objection is timely filed with regard to a particular Cure Amount as proposed in the Cure Amount Notice, such Cure Amount shall be binding on the nondebtor party to the applicable contract or lease.

47.     For those Executory Contracts selected by the Successful Bidder (the "Assigned Contracts") to be included in the assets to be purchased (the "Purchased Assets"), the Debtor will seek the approval of the assumption and the assignment of the Assigned Contracts at the Sale

Hearing.  The payment of the Cure Amount relating to each Assigned Contract will be in full and final satisfaction of all obligations to cure defaults and compensate the nondebtor parties to the Assigned Contracts to be assumed and assigned for any pecuniary losses pursuant to Section 365(b)(1) of the Bankruptcy Code.

48.    Cure Amounts properly disputed by any nondebtor party to an Executory Contract will be resolved by the Court at the Sale Hearing.

49.    In addition to curing defaults, Section 365(f)(2)(B) also requires that the proposed assignee provide "adequate assurance of future performance" to the nondebtor party to an Executory Contract to be assumed and assigned.  The meaning of "adequate assurance of future performance" for the purpose of the assumption of executory contracts and unexpired leases pursuant to Section 365 of the Bankruptcy Code depends on the facts and circumstances of each case, but should be given "practical, pragmatic construction." *See In re DH4, Inc.,* 2007 WL 3283781 at *4 (Bankr. S.D. Fla. 2007) ("What constitutes 'adequate assurance of future performance' must be determined by the facts of the proposed assumption"); *Carlisle Homes, Inc. v. Arrari (In re Carlisle Homes, Inc.),* 103 B.R. 524, 538 (Bankr. D.N.J. 1989); *see also In re Natco Indus., Inc.,* 54 B.R. 436, 440 (Bankr. S.D.N.Y. 1985) (adequate assurance of future performance does not mean an absolute assurance that debtor will thrive and pay rent); *In re Bon Ton Rest. & Pastry Shop, Inc.,* 53 B.R. 789, 803 (Bankr. N.D. Ill. 1985).

50.    To the extent necessary, at the Sale Hearing, the Successful Bidder shall provide evidence of its ability to provide adequate assurance to the nondebtor parties to the Executory Contracts it wishes to acquire.

**C.    The Debtor's Proposed Form and Manner of Notice of the Auction and Sale Hearing is Appropriate.**

51.     Pursuant to Bankruptcy Rule 2002(a), the Debtor is required to provide its creditors with twenty-one (21) days' notice of the Sale Hearing. Pursuant to Bankruptcy Rule 2002(c), such notice must include the date, time and place of the Auction and the Sale Hearing, and the deadline for filing any objections to the relief requested herein.

52.     Courts have held that the notice of a proposed sale of all of the assets of the estate should "(a) place all parties on notice that the debtor is liquidating his business; (b) disclose accurately the full terms of the sale; (c) explain the effect of the sale as terminating the debtor's ability to continue in business; and (d) explain why the proposed price is reasonable and why the sale is in the best interest of the estate." *Delaware & Hudson Ry.*, 124 B.R. at 180; *accord In re Naron & Wagner, Chartered*, 88 B.R. 85, 88 (Bankr. D. Md. 1988).

53.     The proposed form of the Sale Notice (attached hereto as **Exhibit D**) includes, among other things, the date, time, and place of the Auction and the Sale Hearing and information for how to learn the deadline for filing any objections to the relief requested herein once they are set by the Court, and, therefore, complies with Bankruptcy Rule 2002(c). Subject to approval of the Court, it is the Debtor's intention to serve the Sale Notice on all creditors and the other parties in interest within three (3) business days after entry of the Bidding Procedures Order. The Sale Notice also includes instructions for how to obtain a copy of this Motion and the Bidding Procedures Order.

54.     The Debtor submits that the methods of notice described herein comply fully with Bankruptcy Rules 2002 and 9006 and constitute good and adequate notice of the proposed Bidding Procedures and the sale of the Assets. Therefore, the Debtor respectfully requests that this Court approve the proposed notice procedures and the form of the Sale Notice.

**V.**
**REQUEST FOR WAIVER OF STAY**

55.     By this Motion, the Debtor also seeks a waiver of any stay of the effectiveness of

the Orders approving the relief requested in this Motion. Pursuant to Bankruptcy Rule 6004(h),

"[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until

the expiration of 14 days after entry of the order, unless the court orders otherwise." For the reasons

described above, the Debtor submits that ample cause exists to justify a waiver of the 14-day stay

imposed by Bankruptcy Rules 6004(h) and 6006(d), to the extent that they apply.

**VI.**
**NOTICE**

56.     Notice of this Motion has been provided to: (i) the Office of the United States

Trustee for the Eastern District of Texas; (ii) counsel to Rosenthal; (iii) parties to executory

contracts; (v) all parties entitled to receive notice pursuant to Bankruptcy Rule 2002(a)(2);

(vi) various federal and state taxing authorities, including the Internal Revenue Service; and

(vii) all other parties who have expressed a bona fide interest in purchasing the Assets. In light

of the nature of the relief requested, the Debtor submits that no further notice is required.

57.     No prior request for the relief sought in this Motion has been made to this or any

other Court.

        WHEREFORE, the Debtor respectfully requests that the Court (a) enter the Bidding

Procedures Order, in substantially the form attached hereto as **Exhibit A**; (b) enter an Order or

Orders approving the sale of the Assets to the Successful Bidder(s) at the Auction; and (c) grant

such other and further relief to the Debtor as the Court may deem proper.

Dated: April 17, 2025                         Respectfully submitted,

                                   By:  */s/ Christina W. Stephenson*
                                   Vickie L. Driver
                                   State Bar No. 24026886
                                   Christina W. Stephenson
                                   State Bar No. 24049535
                                   **ELLIOT, THOMASON & GIBSON, LLP**
                                   511 N. Akard St. Suite 202
                                   Dallas, TX 75201
                                   Telephone: 469.809.6730
                                   Email: vickie@etglaw.com
                                   Email: crissie@etglaw.com

                                   **COUNSEL TO THE DEBTOR**

### <u>CERTIFICATE OF SERVICE</u>

        The undersigned hereby certifies that on April 17, 2025, she caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Eastern District of Texas and on the parties listed on the attached Service List via First Class U.S. Mail.

                                   */s/ Christina W. Stephenson*
                                   Christina W. Stephenson

# EXHIBIT A

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| IN RE: | § | |
| | § | **CASE NO. 24-41929** |
| **MACADAMIA BEAUTY, LLC,** | § | |
| | § | |
| Debtor. | § | **Chapter 11 (Subchapter V)** |

**ORDER GRANTING PART (I) OF THE MOTION OF MACADAMIA BEAUTY, LLC,**
**FOR ENTRY OF AN ORDER (I) APPROVING SALE PROCEDURES**
**(II) AUTHORIZING THE SALE OF ASSETS AND**
**(III) GRANTING RELATED RELIEF [DOCKET NO. ___]**

Upon the Motion, dated April 17, 2025 (the "<u>Motion</u>"),[1] of Macadamia Beauty, LLC (the

"<u>Debtor</u>") for entry of an order (I) approving certain sale and bidding procedures and related relief

("<u>Part I of the Motion</u>"), and (II) approving the sale of certain Assets free and clear of interests

("<u>Part II of the Motion</u>"), and the Court having determined that the relief requested in Part I of the

Motion is in the best interests of the Debtor, the Debtor's estate, the creditors and other parties in

interest; and upon the record of the hearing held on April 24, 2025 (the "<u>Hearing</u>"); and after due

deliberation thereon; and good and sufficient cause appearing therefore;

IT IS HEREBY FOUND AND DETERMINED THAT:[2]

A.      The Court has jurisdiction over this matter and over the property of the Debtor and

its bankruptcy estate pursuant to 28 U.S.C. §§ 157(a) and 1334. Venue in this District for this

Chapter 11 case and the Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

B.      This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (M) and (N).

---

[1] All capitalized terms not defined herein but defined in the Motion or the attachments thereto shall have the meanings ascribed to them in the Motion or the attachments thereto.

[2] Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate. *See* Bankruptcy Rule 7052.

**Sale and Bidding Procedures Order – Page 1**

C.      Appropriate notice of the relief sought in Part I of the Motion, as to content, service, and time based upon the particular circumstances of this case, has been given and no other or further notice is required.

D.      The Debtor has articulated good and sufficient reasons for, and the best interests of its estate will be served by, this Court granting the relief requested in Part I of the Motion, including approval of: (i) the Bidding Procedures; (ii) the designation of the Stalking Horse Bidder and approval of the Break-Up Fee; (iii) the form and manner of notice of proposed Cure Amounts; and (iv) the form and manner of notice of the Auction and the Sale Hearing described in the Motion.

E.      The proposed Bidding Procedures balance the Debtor's interests in (i) inducing RCB Equities #1, LLC, to serve as the Stalking Horse Bidder, and to commit to consummate the Sale, (ii) preserving the opportunity to attract higher and better offers, and (iii) expediting the sale process.

F.      The Debtor has demonstrated a sound business justification for authorizing payment to the Stalking Horse Bidder of the Break-Up Fee, as set forth in and upon satisfaction of the conditions set forth in the annexed Bidding Procedures, in the amount of $90,000.00, which constitutes a maximum of 5% of the Purchase Price in the Stalking Horse PSA.

G.      Based on the record presented to the Court at the Hearing, the Break-Up Fee is fair and reasonable, and was negotiated by the parties in good faith and at arms' length.

H.      The potential payment to the Stalking Horse Bidder of the Break-Up Fee, in accordance with the Stalking Horse PSA, would be (i) an actual and necessary cost of preserving the Debtor's estate, within the meaning of 11 U.S.C. § 503(b), (ii) necessary to ensure that the Stalking Horse Bidder will continue to pursue its proposed acquisition of the Assets, (iii) of substantial benefit to the Debtor's estate, and (iv) reasonable and appropriate in light of the size

**Sale and Bidding Procedures Order – Page 2**

and nature of the Sale and the efforts that have been and will be expended by the Stalking Horse Bidder, notwithstanding that the proposed Sale is subject to higher or better offers.

I.      The Break-Up Fee was a material inducement for, and a condition of, the Stalking Horse Bidder's entry into the Stalking Horse PSA. Assurance to the Stalking Horse Bidder of payment of the Break-Up Fee will promote more competitive bidding by inducing the Stalking Horse Bid, which otherwise would not have been made.

J.      In reliance on the availability of the Break-Up Fee and procedures set forth in the Bidding Procedures, the Stalking Horse Bidder has expended and will expend substantial resources and funds in connection with the purchase of the Assets, and is willing to serve as the stalking horse in connection with the Sale for the purpose of promoting competitive bidding. By submitting the bid embodied in the Stalking Horse PSA, the Stalking Horse Bidder has provided a benefit to the Debtor's estate by increasing the likelihood that the Assets will be sold. Authorization of the Break-Up Fee may provide the Debtor the opportunity to obtain higher and better offers for the Assets.

K.      The form and manner of the service of the Notice of Cure Amount as described in the Motion is hereby approved in all respects. The Debtor shall file and serve the Notice of Cure Amount no later than **April 22, 2025**. The deadline for nondebtor parties to Executory Contracts to object to any proposed Cure Amount shall be **April 29, 2025**.

L.      The form and manner of service of the Sale Notice described in the Motion are approved in all respects.

M.      Based on the record presented to the Court at the Hearing, the Bidding Procedures, including the Break-Up Fee provisions, are fair and reasonable, reflect the Debtor's exercise of

**Sale and Bidding Procedures Order – Page 3**

prudent business judgment consistent with its fiduciary duties, and represent the best method for maximizing the value to the Debtor's estate of the Assets.

N.      This Court concludes that entry of this Sale Procedures Order is in the best interests of the Debtor, the Debtor's estate, the creditors and other parties in interest because it will, among other things, retain for the Debtor's estate the prospect of a successful Sale to the Stalking Horse Bidder, while enabling the Debtor to solicit competing offers in accordance herewith.

O.      The notice procedures proposed in the Motion are reasonably calculated to provide sufficient notice of the Sale to creditors and other parties in interest, and to those persons and entities interested in bidding on the Assets.

P.      Based upon the foregoing findings and conclusions, and upon the record made before this Court at the Hearing, and good and sufficient cause appearing therefor; it is hereby

**ORDERED, ADJUDGED AND DECREED THAT:**

1.      The relief requested in Part I of the Motion with respect to the Sale Procedures (including the Break-Up Fee) and the notice of Sale Hearing is granted, subject to the terms and conditions set forth in this Sale Procedures Order.

2.      The Sale Hearing shall be held on **May 13, 2025 at _____** Central time in the United States Bankruptcy Court, Eastern District of Texas, Sherman Division at which time the Court will consider the relief requested in Part II of the Motion with respect to the Sale and consider approval of the Successful Bidder and the Back-up Bidder resulting from the Auction.

3.      Objections to the entry of the Sale Order, if any, must (a) be in writing, (b) conform to the requirements of the Bankruptcy Code, the Bankruptcy Rules and the Local Rules of the United States Bankruptcy Court for the Eastern District of Texas, (c) set forth the name of the objector and the nature and amount of any claim or interest held by such objector against the

Debtor or its property, (d) state the legal and factual basis for the objection and the specific grounds

therefor, and (e) be filed with the Bankruptcy Court and served upon counsel to the Debtor, Vickie

L. Driver, Elliot, Thomason, & Gibson, LLP, 511 N. Akard St., Suite 202, Dallas, TX 75201 and

counsel to the Stalking Horse Bidder, Simon Aron, Esq. Wolf, Rifkin, Shapiro, Schulman &

Rabkin, LLP, 11400 W. Olympic Blvd. 9th Fl., Los Angeles, CA, 90064 by five business days

prior to the Sale Hearing, (the "Objection Deadline").  Only timely filed and served responses,

objections or other pleadings will be considered by the Court at the Sale Hearing.  Failure to file

and serve an objection in the foregoing manner shall be a bar to the assertion, at the Sale Hearing

or thereafter, of any objection to the Motion, the Sale Order, the Sale or of the Debtor's

consummation or performance of the Sale.

4.      The Sale Hearing may be adjourned from time to time without further notice to

creditors or parties in interest other than by announcement of the adjournment in open court or on

the Court's calendar on the date scheduled for the Sale Hearing or any other adjourned date.

5.      The Bidding Procedures attached hereto as Attachment 1 are hereby approved and

shall apply to the Sale.

6.      Acquisition Proposals (as defined in the Bidding Procedures) shall be delivered to

the Debtor so as to be received by them no later than **4:00 p.m. CST on April 30, 2025** (the "Bid

Deadline").  The Acquisition Proposals shall be delivered to the Debtor as follows:

> Vickie L. Driver
> Elliot, Thomason, & Gibson, LLP,
> 511 N. Akard St., Suite 202,
> Dallas, TX 75201
> Email: vickie@etglaw.com

7.      The Acquisition Proposals will be served by the Seller upon the Stalking Horse

Bidder upon receipt.

**Sale and Bidding Procedures Order – Page 5**

8.      If a Qualified Acquisition Proposal (as defined in the Bidding Procedures) is submitted prior to the Auction Date (defined below), then an auction (the "Auction") will be held on **May 5, 2025, at 10:00 a.m.** (the "Auction Date") at the offices of counsel for the Debtor, Elliot, Thomason, & Gibson, LLP, 511 N. Akard St., Suite 202, Dallas, TX 75201.  The Auction shall be conducted in accordance with the Bidding Procedures set forth on Attachment 1 to this Order.

9.      The Debtor shall reasonably determine whether a submitted Acquisition Proposal meets the qualifications of a Qualified Acquisition Proposal. The Prevailing Bidder and the Back-Up Bidder, as reasonably selected by the Debtor as being the most favorable transactions for the Debtor's estate, shall be submitted to the Court for approval at the Sale Hearing.  Notwithstanding the preceding sentence, (a) in the event the prevailing bid is a cash bid, the Stalking Horse Bidder shall, if its Acquisition Proposal is determined to be the next highest Acquisition Proposal, serve as a Back-Up Bidder; however, (b) in the event the prevailing bid is a credit bid, the Stalking Horse bidder shall, if its Acquisition Proposal is determined to be the next highest Acquisition Proposal, have the option, in its sole discretion, to serve as a Back-Up Bidder.  In the event of a dispute regarding the Debtor's selection of the Prevailing Bidder or the Back-Up Bidder, such dispute shall be resolved by the Court.

10.      The Debtor is hereby authorized and empowered to take such steps, and do such other things as may be necessary to implement and effect the terms and requirements established by this Sale Procedures Order.

11.      The Break-Up Fee is hereby approved, and the Debtor is authorized to pay such amount on the terms set forth in the Bidding Procedures.

12.      The notice of the Motion and the Sale Hearing described in the Motion shall be good and sufficient, and any requirements for other or further notice are waived and dispensed

**Sale and Bidding Procedures Order – Page 6**

with pursuant to Bankruptcy Rules 2002 and 6004, if given as follows: On or before **April 25, 2025**, the Debtor (or its agents) shall serve the Motion, the Stalking Horse PSA, the proposed Approval Order and a copy of this Sale Procedures Order by first-class mail, postage prepaid, upon (i) the U.S. Trustee; (ii) counsel for the Stalking Horse Bidder; (iii) all entities (or counsel therefor) known to have asserted any lien, claim, encumbrance, right of refusal or other interest of any kind whatsoever in or upon the Assets; (iv) all federal, state and local regulatory or taxing authorities or recording offices which have a reasonably known interest in the relief requested by the Motion; (v) all parties known to have expressed a bona fide interest in acquiring the Assets; and(vi) all entities who have filed a notice of appearance and request for service of papers in this case.

13.    All of the terms and provisions of this Sale Procedures Order and the Bidding Procedures shall be binding in all respects upon, and shall inure to the benefit of the Stalking Horse Bidder and/or other potential bidders, the Debtor, the Debtor's estate and their successors and assigns and this Sale Procedures Order shall survive the dismissal of this case.

14.    This Court shall retain jurisdiction to interpret, construe and enforce the terms and provisions of this Sale Procedures Order in all respects, including without limitation, to decide any disputes arising between the Debtor, on the one hand, and the Stalking Horse Bidder and/or other potential bidders, on the other, with respect thereto.  This retention of jurisdiction over the Stalking Horse Bidder and/or other potential bidders shall not be deemed to extend to any dispute that does not involve the interpretation, construction, enforcement and/or effect of this Sale Procedures Order.

ENTERED in Plano, Texas this _____ day of April, 2025.


_____
Honorable Brenda T. Rhoades
Chief United States Bankruptcy Judge


**Sale and Bidding Procedures Order – Page 7**

# EXHIBIT B

## BIDDING PROCEDURES

These Bidding Procedures set forth the process by which Macadamia Beauty, LLC (the "Debtor"), shall conduct a sale by auction (the "Auction") of substantially all of its assets (the "Assets").  The Assets are being offered in their "as is" "where is" condition together with any associated leases, furniture, and fixtures, equipment as set forth in the Debtor's schedules.  The Bidding Procedures were approved by Order dated _____, 2025 (the "Bid Procedures Order") of the United States Bankruptcy Court for the Eastern District of Texas, Sherman Division (the "Bankruptcy Court") (in which the Debtor's Chapter 11 bankruptcy case, No. 24-41929, is pending).

On April __, 2025 the Debtor entered into an Purchase and Sale Agreement (the "Stalking Horse PSA") with RCB Equities #1, LLC ("Stalking Horse Bidder") for the sale of the Assets subject to higher and better offers that comply with the Bidding Procedures outlined below.  The purchase price under the Stalking Horse PSA is $1,800,000.00 in cash.

1.      Bid Requirements.  A party who wishes to submit a competing bid to the bid of the Stalking Horse Bidder and participate in the Auction for the purchase of the Property must meet the following qualifications:

(A)     Bidding Deadline.  Any proposal by a competing bidder for the purchase of the Assets (an "Acquisition Proposal"), must be submitted, in writing, so that it is received by the Debtor no later than 4:00 p.m. Central Standard Time on April 30, 2025 (the "Bidding Deadline").   All Acquisition Proposals shall be submitted to the Debtor at the following address: Vickie L. Driver, Elliott, Thomason & Gibson, LLP, 511 N. Akard, Suite 202, Dallas, TX 75201, vickie@etglaw.com.   Seller shall serve Acquisition Proposals on Stalking Horse Bidder.

(B)     Acquisition Proposal.  An Acquisition Proposal is a signed letter stating that:

(a)     The bidder offers to purchase the Property in cash;

(b)     Bidder's bid has no financing contingency;

(c)     Bidder agrees to be the Prevailing Bidder if its bid is selected by the Debtor at the Auction;

(d)     Bidder agrees to be the Back-up Bidder (and therefore potentially the Prevailing Bidder) if its bid is deemed to be the second highest and selected as such by the Debtor at the Auction;

(e)     The bidder's offer is not subject to any due diligence contingency and is irrevocable until two (2) business days after the earlier of (i) the closing of the sale of the Property; or (ii) 45 days after the final Sale Hearing.

1

(f)    An Acquisition Proposal must also be accompanied by:

   (i)    purchase and sale agreement substantially in the form of the Stalking Horse PSA with respect to all material terms and conditions therein except as modified to price, which must be no less than $1,900,000.00;

   (ii)   a redline comparison of the bidder's purchaser and sale agreement to the Stalking Horse PSA;

   (iii)  written evidence, satisfactory to the Debtor, of (y) available cash or a commitment for financing in an amount sufficient to close a transaction proposed by such bidder should such bidder be selected or becomes the Prevailing Bidder pursuant to these Bidding Procedures, and (z) that such funds shall become available to the bidder within fifteen (15) days after the Sale Hearing;

   (iv)   an earnest money deposit equal to ten percent (10%) of such bidder's guaranteed purchase price. The earnest money deposit must be made by certified check or wire transfer delivered to Debtor's counsel along with the Acquisition Proposal by the Bidding Deadline; and,

   (v)    a bidder submitting an Acquisition Proposal is deemed to agree to submit itself to the jurisdiction of the United States Bankruptcy Court for the Eastern District of Texas.

2.    Qualified Acquisition Proposal. An Acquisition Proposal timely submitted by a bidder that Debtor determines meets the requirements set forth in Paragraph 1 above is considered a "Qualified Acquisition Proposal" and the bidder a "Qualified Bidder." The Debtor shall notify bidders whether their bids have been determined to be a Qualified Acquisition Proposal by no later than 5:00 p.m. Central Standard Time on May 2, 2025. The Stalking Horse Bidder is a "Qualified Bidder" in all respects and the offer in the Stalking Horse PSA is a Qualified Acquisition Proposal.

3.    Auction. If the Debtor does not receive any Qualified Acquisition Proposal other than that deemed a Qualified Acquisition Proposal from the Stalking Horse Bidder, the Debtor will report the same to the Bankruptcy Court at the Sale Hearing. If the Debtor receives at least one Qualified Acquisition Proposal in addition to that from the Stalking Horse Bidder, then the Auction shall be conducted at the offices of counsel for the Debtor at Elliott, Thomason & Gibson, LLP, 511 N. Akard, Suite 202, Dallas, TX 75201 on May 5, 2025, at 10:00 a.m. or at such other time and place as may be ordered by the Bankruptcy Court (the "Auction Date"), and the following rules shall apply at the Auction:

2

(A)     For a Qualified Acquisition Proposal to be considered, a bidder must appear in person at the Auction or through a duly authorized representative, unless alternative arrangements are made in advance with the Debtor in the Debtor's sole discretion.

(B)     The Stalking Horse Bidder and any third party submitting a Qualified Acquisition Proposal may improve upon their respective offers to the Debtor at any time prior to the conclusion of the Auction, in increments of at least $100,000 (the "Incremental Bid Amount") in consideration above the then-highest offer; *provided, however*, that the Qualified Bidder must be able to show proof of immediately available funds in the amount of any bid made.

(C)     Only Qualified Bidders may participate in the Auction.  Bidding shall continue until no other bidder who has submitted a Qualified Acquisition Proposal in attendance at the Auction desires to bid.

(D)     The bidder (or bidders) who, in the reasonable discretion of the Debtor, prevails at the Auction by presenting the highest and best Qualified Acquisition Proposal is referred to as the "Prevailing Bidder."  The Debtor shall also identify the next highest or next best bid as a back-up (the "Back-up Bid" by the "Back-Up Bidder").

(E)     In determining whether a Qualified Acquisition Proposal is higher and better, the Debtor may consider, among other things, whether the bid (i) offers the highest purchase price to the Debtor's estate; (ii) contains terms and conditions no less favorable to the Debtor than the terms and conditions contained in the Stalking Horse PSA; and (iii) includes evidence satisfactory to the Debtor establishing that the third party is financially capable of timely performing.

4.     <u>Hearing and Sale Free and Clear of Liens</u>.  A hearing shall be held before the Bankruptcy Court in Plano, Texas on May 13, 2025 at _____, regarding entry of an order approving the sale of the Property to the Prevailing Bidder.  Sale of the Property to the Prevailing Bidder shall be free and clear of any and all liens, claims, encumbrances, rights or interests of any sort whatsoever.  At the Sale Hearing the Debtor will present both the Qualified Acquisition Proposal of the Prevailing Bidder and the Qualified Acquisition Proposal of the Back-Up Bidder to the Bankruptcy Court for approval.  The approval of the Back-Up Bidder is to ensure that in the event the Prevailing Bidder fails to close the transaction, the Back-Up Bidder shall be substituted as the Prevailing Bidder.  In the event that  no Qualified Acquisition Proposal other than the transaction proposed by the Stalking Horse PSA was submitted by the Bid Deadline such that no Auction was held, then, in such situation, the Stalking Horse Bidder shall be deemed the Prevailing Bidder and the Debtor will present the Stalking Horse Bidder to the Bankruptcy Court for approval.

5.     Break-Up Fee.  In the event the Stalking Horse Bidder is not the Prevailing Bidder, and in consideration for the Stalking Horse Bidder having expended considerable time and expense in connection with entering into the Stalking Horse PSA, Seller shall pay to the Stalking Horse Bidder a Break-Up Fee in the amount of Ninety Thousand and No/100 U.S. Dollars ($90,000.00) which amount shall not constitute a penalty and which shall be payable to the Stalking Horse Bidder pursuant to the terms set forth in the Stalking Horse PSA.

6.     Closing.  The closing of the Sale of the Property to the Prevailing Bidder will occur in accordance with the terms of the executed asset purchase agreement.

7.     Failure to Consummate Purchase.  If for any reason the Prevailing Bidder fails to consummate a purchase of the Property, or any part thereof, the Back-Up Bidder shall be automatically substituted as the Prevailing Bidder.

8.     Return of Earnest Money Deposit.  The earnest money deposit of a bidder who is not selected as the Prevailing Bidder or the Back-Up Bidder shall be returned within (3) business days of the entry of the Sale Order approving the sale of the Property to the Prevailing Bidder.  If the Prevailing Bidder does not close the approved sale, the Debtor shall retain the earnest money deposit of the Prevailing Bidder who fails to close as liquidated damages.  If the Prevailing Bidder does close the approved sale, the earnest money deposit of the Back-Up Bidder shall be returned within three (3) business days after the close of the Sale to the Prevailing Bidder.

9.     Reservation of Rights; Deadline Extensions.  The Debtor reserves its rights to (i) impose, at or prior to the Auction, additional terms and conditions on a Sale of the Assets consistent with the Bidding Procedures Order; (ii) extend the deadlines set forth in the Bidding Procedures, adjourn the Auction at the Auction and/or adjourn the Sale Hearing in open court without further notice; (iii) withdraw from the Auction the Assets at any time prior to or during the Auction or cancel the Auction; (iv) seek guidance or relief from the Bankruptcy Court as to any issues relating to the Auction; and (v) seek any relief the Debtor deems appropriate in connection with the Sale.

# EXHIBIT C

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | **CASE NO. 24-41929** |
| **MACADAMIA BEAUTY, LLC,** | § | |
| | § | |
| **Debtor.** | § | **Chapter 11 (Subchapter V)** |

### NOTICE OF PROPOSED CURE AMOUNTS OF EXECUTORY CONTRACTS
### RELATING TO SALE OF ASSETS

> YOU ARE RECEIVING THIS NOTICE BECAUSE YOU MAY BE A COUTNERPARTY TO
> AN EXECUTORY CONTRACT OR UNEXPIRED LEASE WITH MACADAMIA BEAUTY,
> LLC.  PLEASE READ THIS NOTICE CAREFULLY AS YOUR RIGHTS MAY BE
> AFFECTED BY THE TRANSACTIONS DESCRIBED HEREIN.

1.      By a Motion dated April 17, 2025 (Docket No. 161) (the "Sale Motion"), Macadamia Beauty, LLC, debtor and debtor in possession in the above-captioned chapter 11 bankruptcy case (the "Debtor") sought approval of certain bidding procedures for, and the ultimate sale of all or substantially all of its assets (the "Assets").

2.      In the Sale Motion, the Debtor requested that the United States Bankruptcy Court for the Eastern District of Texas, Sherman Division (the "Bankruptcy Court") enter an order (the "Bidding Procedures Order") approving auction and sale procedures (the "Bidding Procedures")[1] for the sale of the Assets.  The Court entered the Bidding Procedures Order on _____, 2025. The Bidding Procedures Order approved the Debtor's designation of RCB Equities #1, LLC as the Stalking Horse Bidder and a Break-Up Fee to the Stalking Horse Bidder.

3.      A copy of the Sale Motion and Bidding Procedures Order may be obtained by written request to counsel to the Debtor, Elliott, Thomason & Gibson, LLP, 511 N. Akard St., Suite 202, Dallas, TX 75201, Attention: Vickie L. Driver, Email: vickie@etglaw.com.

4.      The Sale Motion also requests that the Assets be sold free and clear of all liens, claims and encumbrances thereon, with such interests in the Assets to be transferred, and attach to the sale proceeds (the "Sale").

5.      The following are key dates in connection with the proposed sale of the Assets:

---

[1] Capitalized terms not otherwise defined herein have the meaning given to them in the proposed Bidding Procedures Order or the Bidding Procedures.

| Event | Date |
|---|---|
| Deadline to file and serve Notice of Cure Amounts | April 22, 2025 |
| Deadline to object to proposed Cure Amounts | April 29, 2025 |
| Deadline for Potential Bidders to submit Acquisition Proposals | April 30, 2025 |
| Deadline to file and serve notice of Qualified Acquisition Proposals | May 2, 2025 |
| Auction and Selection of Prevailing Bidder and Back-Up Bidder | May 5, 2025 |
| Deadline to File & Serve Objections to Sale Motion on Approval of Sale | May 6, 2025 |
| Hearing on Sale Motion to approve Sale of Assets | May 13, 2025 |
| Deadline to Close Sale Transaction | May 30, 2025 |

6.      **THESE DATES ARE SUBJECT TO CHANGE BY THE BANKRUPTCY COURT. ALL PARTIES ARE ENCOURAGED TO FREQUENTLY CHECK THE BANKRUPTCY COURT DOCKET FOR CHANGES TO THESE DATES. ANY TIMES ARE CENTRAL TIME.**

7.      You are receiving this notice because you are a counterparty to an executory contract or an unexpired lease with the Debtor (collectively referred to as the "Executory Contracts"). The Debtor anticipates that the Prevailing Bidder of the Assets may want to acquire certain of the Debtor's Executory Contracts.  Accordingly, the Debtor will seek to assume and assign those Executory Contracts designated by the Prevailing Bidder to be acquired (the "Designated Contracts").  A list of the Debtor's Executory Contracts that the Prevailing Bidder may potentially acquire is set forth in Exhibit "1" hereto.

8.      Section 365(b)(1) of the Bankruptcy Code requires a chapter 11 debtor to cure, or provide adequate assurance that it will promptly cure, any defaults under executory contracts and unexpired leases at the time of assumption.  The required cure amount (the "Cure Amount") for each of the Executory Contracts is set forth on Exhibit 1.  If no amount is stated for a particular Executory Contract, the Debtor believes that there is no Cure Amount outstanding for such contract or lease.

9.      Pursuant to the Bidding Procedures Order, and as set forth above, if you disagree with the Cure Amount set forth on Exhibit 1, you must file an objection no later than **April 29, 2025**.

10.      An Auction for the sale of the Assets is currently set for May 5, 2025.  The bid determined by the Debtor to be Prevailing Bid for the Assets will be presented to the Bankruptcy Court for approval at the Sale Hearing.  In connection with the approval of the Sale, the Debtor will seek the approval from the Bankruptcy Court to assume the Designated Contracts and assign same to the Prevailing Bidder.  If you are a counterparty to a Designated Contract and you object to the assignment of your Designated Contract to the Prevailing Bidder, you may file an objection at anytime prior to the Sale Hearing or by appearing and objecting at the Sale Hearing.

11.      To the extent you object to (i) the proposed Cure Amount, or (ii) the proposed assumption and assignment to the Prevailing Bidder of your Designated Contract, you must timely file your objection with the Bankruptcy Court and serve your objection on counsel for the Debtor: Elliott, Thomason & Gibson, LLP, 511 N. Akard St., Suite 202, Dallas, TX 75201, Attention: Vickie L. Driver, Email: vickie@etglaw.com no later than the deadlines set forth herein.

Dated: April ___, 2025                        Respectfully submitted,


                                    By:  */s/ Christina W. Stephenson*
                                    Vickie L. Driver
                                    State Bar No. 24026886
                                    Christina W. Stephenson
                                    State Bar No. 24049535
                                    **ELLIOT, THOMASON & GIBSON, LLP**
                                    511 N. Akard St. Suite 202
                                    Dallas, TX 75201
                                    Telephone: 469.809.6730
                                    Email: vickie@etglaw.com
                                    Email: crissie@etglaw.com

                                    **COUNSEL TO THE DEBTOR**

# EXHIBIT D

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | | |
|---|---|---|
| IN RE: | § | |
| | § | **CASE NO. 24-41929** |
| **MACADAMIA BEAUTY, LLC,** | § | |
| | § | |
| **Debtor.** | § | **Chapter 11 (Subchapter V)** |

**NOTICE OF HEARING TO APPROVE THE SALE OF ALL OR SUBSTANTIALLY
ALL OF THE DEBTOR'S ASSETS AND RELATED OBJECTION DEADLINE**

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

1.      By a Motion dated April 17, 2025 (Docket No. 161) (the "Sale Motion"), Macadamia Beauty, LLC, debtor and debtor in possession in the above-captioned case (the "Debtor") sought approval of certain bidding procedures for, and the ultimate sale of all or substantially all of its assets (the "Assets").

2.      In the Sale Motion, the Debtor requested that the United States Bankruptcy Court for the Eastern District of Texas, Sherman Division (the "Bankruptcy Court") enter an order (the "Bidding Procedures Order") approving auction and sale procedures (the "Bidding Procedures")[1] for the Assets.  The Court entered the Bidding Procedures Order on _____, 2025. The Bidding Procedures Order approved the Debtor's designation of a Stalking Horse Bidder and certain Bid Protections to the Stalking Horse Bidder.

3.      A copy of the Sale Motion and Bidding Procedures Order may be obtained by written request to counsel to the Debtor, Elliott, Thomason & Gibson, LLP, 511 N. Akard St., Suite 202, Dallas, TX 75201, Attention: Vickie L. Driver, Email: vickie@etglaw.com.

4.      The Sale Motion also requests that the Assets be sold free and clear of all liens, claims and encumbrances thereon, with such interests in the Assets to be transferred, and attach to the sale proceeds (the "Sale").

---

[1] Capitalized terms not otherwise defined herein have the meaning given to them in the proposed Bidding Procedures Order or the Bidding Procedures.

5.      The Bidding Procedures Order provides the following key dates in connection with the sale of the Assets:

| Event | Date |
|---|---|
| Deadline to file and serve Notice of Cure Amounts | April 22, 2025 |
| Deadline to file a form Asset Purchase Agreement | April 21, 2025 |
| Deadline for Potential Bidders to submit Bids | April 30, 2025 |
| Deadline to file and serve notice of Qualified Bidders | May 2, 2025 |
| Auction and Selection of Successful Bidder | May 5, 2025 |
| Deadline to File & Serve Notice of Successful Bid | May 6, 2025 |
| Deadline to object to proposed Cure Amounts | April 29, 2025 |
| Deadline to File & Serve Objections to Sale Motion on Approval of Sale | May 6, 2025 |
| Hearing on Sale Motion | May 13, 2025 |
| Deadline to Close sale(s) transaction | May 30, 2025 |

5.      **THESE DATES ARE SUBJECT TO CHANGE BY THE BANKRUPTCY COURT. ALL PARTIES ARE ENCOURAGED TO FREQUENTLY CHECK THE BANKRUPTCY COURT DOCKET FOR CHANGES TO THESE DATES. ALL TIMES ARE CENTRAL TIME.**

6.      Objections to the Sale of the Assets to a Successful Bidder must (a) be in writing, (b) state the basis of such objection with specificity, (c) filed with the Bankruptcy Court, and (d) be served upon: (i) counsel to the Debtor, Elliott, Thomason & Gibson, LLP, 511 N. Akard St., Suite 202, Dallas, TX 75201, Attention: Vickie L. Driver, Email: vickie@etglaw.com; and (ii) the Office of the United States Trustee, Bank of America Building, 110 North College Avenue, Suite 300, Tyler, Texas 75702 (Attn: John Vardeman), by the deadline stated above.

Dated: April ___, 2025                    Respectfully submitted,

                                           By: /s/ Christina W. Stephenson
                                           Vickie L. Driver
                                           State Bar No. 24026886
                                           Christina W. Stephenson
                                           State Bar No. 24049535
                                           ELLIOT, THOMASON & GIBSON, LLP
                                           511 N. Akard St. Suite 202
                                           Dallas, TX 75201
                                           Telephone: 469.809.6730
                                           Email: vickie@etglaw.com
                                           Email: crissie@etglaw.com

                                           **COUNSEL TO THE DEBTOR**