# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### PLANO DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | **Case No. 24-41929** |
| **MACADAMIA BEAUTY, LLC,** | § | |
| | § | **Chapter 11** |
| | § | |
| | § | |
| Debtor. | § | **Subchapter V** |

## ORDER CONFIRMING DEBTOR'S SECOND AMENDED SUBCHAPTER V PLAN OF REORGANIZATION PURSUANT TO 11 U.S.C. § 1191 (a) (CONSENSUAL)

This matter came before the Court on June 24, 2025, at 9:30 a.m. (CST), to consider confirmation of *Debtor's Second Amended Subchapter V Plan of Reorganization* [Doc. No. 198] filed on May 23, 2025 by Macadamia Beauty, LLC (the "**Debtor**"). The *Debtor's Second Amended Subchapter V Plan of Reorganization*, as modified as set forth herein (consistent with the announcements on the record at the hearing) and as attached hereto as **Exhibit 1**, is referred to herein as the "**Plan**"). In connection with the confirmation of the Plan, the Court has considered the evidence presented as well as the record of this case, including the testimony of Henry W. Stein proffered by the Debtor, as well as announcements on the record of agreements by certain parties in interest. The Court, having considered that all classes of creditors that were required to vote on the Plan have accepted the Plan, and any objections to the Plan have been resolved voluntarily between the parties, after notice and a hearing, the Court finds and concludes as follows:

## FINDINGS OF FACTS & CONCLUSIONS OF LAW

A.     **Jurisdiction**. The Court has jurisdiction over this matter under 28 U.S.C. §§ 157 and 1334, the United States District Court's general order of reference, and other various

applicable provisions of the Bankruptcy Code[1] and the Federal Rules of Bankruptcy Procedure ("**FRBP**").

    **B.**    <u>Venue</u>.  Venue before the Court is proper before this Court under 28 U.S.C. §§ 1408 and 1409.  The Plan is dated and identifies the entity submitting it, thereby satisfying Bankruptcy Rule 3016(a). The Plan and Confirmation Hearing Notice were each transmitted and served in compliance with the applicable provisions of the Bankruptcy Code and the Bankruptcy Rules.

    **C.**    <u>Burden of Proof</u>.  The Debtor, as proponent of the Plan, has met its burden of proving the applicable elements of 11 U.S.C. §1191(a) by a preponderance of the evidence.

    **D.**    <u>Notice</u>.  Due, adequate, and sufficient notice of the Plan and the *Amended Order Setting Plan and Related Deadlines and Hearing on Confirmation (Small Business Debtor – Subchapter V)* [Doc. No. 157] (the "**Confirmation Hearing Order**") were served upon all creditors, interest holders, and parties requesting notice.  Accordingly, the method of service and solicitation of acceptance of the Plan, notice of the hearing to consider confirmation of the Plan, and notices of all other deadlines or requirements relating thereto (collectively, the "**Confirmation Deadlines**") were in compliance with the FRBP, were adequate and reasonable under the circumstances of this case, and no further or additional notice of the confirmation hearing or the confirmation deadlines was necessary or required.

    **E.**    <u>Objections to Confirmation</u>.  Rosenthal & Rosenthal of California, Inc. filed an objection to confirmation of the Plan on May 6, 2025 [Docket No. 185]. This objection has been resolved by the parties pursuant to the *Joint Motion of Debtor and Rosenthal & Rosenthal of California, Inc. to Approve Settlement under Rule 9019* filed on May 23, 2025 [Doc. No. 197].

---

[1] The term "Bankruptcy Code" refers to the applicable section(s) of 11 U.S.C. § 101, *et. seq.* unless otherwise indicated.

**F.**    The Plan complies with 11 U.S.C. § 1190 because it contains a brief history of Debtor's business operations; a liquidation analysis; information with respect to the Debtor's ability to make the proposed payments under the Plan; and the submission of all or a portion of the subchapter V debtor's post-petition income and value from the sale of assets to a liquidating trust under the supervision and control of a liquidating trustee as is necessary for the execution of the Plan.  The submission of income for execution of the Plan will be the proceeds from the sale of substantially all of the Debtor's assets.

**G.**    **Proper Classification of Claims – 11 U.S.C. §§ 1122 and 1123**.    The Plan adequately and properly identifies and classifies all claims.  Pursuant to 11 U.S.C. § 1122(a), the claims placed in each class are substantially similar to other claims in each such class.  Pursuant to 11 U.S.C. § 1123(a)(1), valid legal and business reasons exist for the various classes of claims created under the Plan and such classification does not unfairly discriminate among holders of claims. The classification of claims in the Plan is reasonable.

**H.**    **Specified Unimpaired Classes – 11 U.S.C. § 1123(a)(2)**.    The Plan specifies all classes or claims or interests that are not impaired under the plan.

**I.**    **Specified Treatment of Impaired Classes – 11 U.S.C. § 1123(a)(3)**.    The Plan specifies the treatment of all classes of claims or interests that are impaired under the Plan.

**J.**    **No Discrimination – 11 U.S.C. § 1123(a)(4)**.    The Plan provides for the same treatment of claims or interests in each respective class unless the holder of a particular claim or interest has agreed to a less favorable treatment of such claim or interest.

**K.**    **Implementation of the Plan – 11 U.S.C. § 1123(a)(5)**.    The Plan provides adequate means for the Plan's implementation, including as modified in this Order.

**L.**     **Interests of the Creditors, Equity Security Holders, & Public Policy – 11 U.S.C. § 1123(a)(7)**.  The Plan contains only provisions that are consistent with the interests of creditors and equity security holders and with public policy with respect to the manner of selection of any officer, director, or trustee under the Plan and any successor to such officer, director, or trustee.

**M.**     **Assumption & Rejection – 11 U.S.C. § 1123(b)(2)**.  Article 10 of the Plan, pursuant to § 365 of the Bankruptcy Code, provides for the rejection as of the Effective Date of Executory Contracts (as defined therein) not rejected by order of the Court or not otherwise assumed in connection with the Sale.

**N.**     **Sale of Assets and Distribution of Proceeds - 11 U.S.C. §§ 1123(b)(4).** Article 6 of the Plan provides for the sale of all or substantially all of the property of the estate and the distribution of the proceeds of such sale, through the Liquidating Trust, among holders of claims or interests.

**O.**     **Additional Plan Provisions – 11 U.S.C. § 1123(b)(6)**.  Each of the provisions of the Plan is appropriate and not inconsistent with the applicable provisions of the Bankruptcy Code.

**P.**     **Principal Purpose of the Plan – 11 U.S.C. § 1129(d)**.  The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act of 1933.

**Q.**     **Subchapter V Plan Requirements – 11 U.S.C. § 1189**.  The Plan complies with § 1189 because it was filed by the Debtor not later than 90 days after the order for relief under Chapter 11 or the Court extended the period because the need for the extension was attributable to circumstances for which the Debtor should not justly be held accountable.

**R.** <u>**Contents of a Subchapter V Plan – 11 U.S.C. § 1190**</u>. In compliance with § 1190, the Plan includes: (1) a brief history of the business operations of the debtor, (2) a liquidation analysis, and (3) information with respect to the ability of the Debtor to make payments under the proposed plan. The Plan provides for the submission of all or such portions of the future earnings or other future income of the Debtor to the Liquidating Trust under the supervision and control of the Liquidating Trustee as is necessary for the execution of the Plan. The submission of income for execution of the Plan herein will be the proceeds from the sale of substantially all the Debtor's assets.

**S.** <u>**Satisfaction of Conditions – 11 U.S.C. § 1191(a)**</u>. The Court finds that the Plan satisfies the relevant provisions of 11 U.S.C. § 1129(a) and, as a result, is a consensual Subchapter V plan under § 1191(a).

**T.** With respect to the relevant provisions of § 1129(a), the Court finds and concludes as follows:

1. <u>**11 U.S.C. § 1129(a)(1) and (a)(2)**</u>. The Plan and the Plan proponent comply with the applicable provisions of the Bankruptcy Code.

2. <u>**11 U.S.C. § 1129(a)(3)**</u>. The Plan was proposed in good faith and not by any means forbidden by law.

3. <u>**11 U.S.C. § 1129(a)(4)**</u>. Any payment made or to be made by the Debtor, for services or for costs and expenses in or in connection with the case, or in connection with the Plan and incident to the case, has been approved by, or is subject to the approval of, the Court as reasonable.

4. <u>**11 U.S.C. § 1129(a)(5)**</u>. The duly elected managers of the Liquidating Debtor, which shall initially be Mr. Henry Stein, will act as management of the Liquidating

Debtor, in compliance with Bankruptcy Code section 1129(a)(5), until dissolution. Ms. Katharine Clark is appointed as the Liquidating Trustee under the Liquidating Trust Agreement.   To reduce costs and take advantage of his institutional knowledge, it is anticipated that the Liquidating Trustee may retain Henry Stein, the Debtor's current CEO, as a consultant on an hourly rate basis to assist the Liquidating Trustee in carrying out certain of the Liquidating Trustee's duties.  In that role as consultant, Mr. Stein will not be considered to have any fiduciary obligations to the Liquidating Trustee or its beneficiaries. Nothing herein, however, shall be deemed to modify any fiduciary duties Mr. Stein may have to the Liquidating Debtor after the Effective Date as manager of the Liquidating Debtor until the earlier of his resignation or the Liquidating Debtor's dissolution.   The Liquidating Trust shall pay for the reasonable costs of winding down and dissolving the Liquidating Debtor, including the hourly rate of Mr. Stein and the fees and expenses of professionals(legal or otherwise) retained by the Liquidating Debtor; provided, however, that prior to incurring any such costs, the Liquidating Trustee has approved such costs or a budget for such costs, including the anticipated hours of Mr. Stein and any professionals (legal or otherwise) retained by the Liquidating Debtor.

5.    **11 U.S.C. § 1129(a)(7)**.  The Plan provides that, with respect to each impaired class of claims or interests, each holder of a claim or interest of such class has accepted the plan, or will receive or retain under the plan on account of such claim or interest property of a value, as of the Effective Date of the Plan, that is not less than the amount that such holder would so receive or retain if the debtor were liquidated under chapter 7 of this title on such date.

6.      **11 U.S.C. § 1129(a)(8)**.  With respect to each class of claims or interests, such class has accepted the Plan, or such class is not impaired under the plan.

7.      **11 U.S.C. § 1129(a)(9)**.  The treatment of Administrative Claims and Priority Tax Claims under the Plan satisfies the requirements of Bankruptcy Code Section 1129(a)(9).

8.      **11 U.S.C. § 1129(a)(10)**.  If a class of claims is impaired under the Plan, at least one class of claims that is impaired under the Plan has accepted the Plan, determined without including any acceptance of the plan by any insider.

9.      **11 U.S.C. § 1129(a)(11)**.  Confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the Plan, unless such liquidation or reorganization is proposed in the Plan.

10.      **11 U.S.C. § 1129(a)(12)**.  All fees payable under 28 U.S.C. § 1930, as determined by the Court at the hearing on confirmation of the plan, have been paid or the plan provides for the payment of all such fees on the Effective Date of the Plan.

11.      **11 U.S.C. § 1129(a)(16)**.  All transfers of property under the Plan shall be made in accordance with any applicable provisions of nonbankruptcy law that govern the transfer of property by a corporation or trust that is not a moneyed, business, or commercial corporation or trust.

12.      **Non-Material Modifications of the Plan.**  As announced on the record at the confirmation hearing on June 24, 2025, the following are non-material modifications to the Plan:

   i.   Article I of the Plan is amended as follows:

   1.   Definition 36 defining "Liquidating Debtor," is amended as follows: **"means the Debtor on and after the Effective Date. For the avoidance of doubt, all references to 'Liquidating Debtor' in the Plan shall be interpreted to allow all powers, rights, claims, defenses, assets, and everything whatsoever granted to the Liquidating Debtor to inure to the benefit of the Liquidating Trust."**

2. Definition 36a is **underlined**added defining "Liquidating Trust," to mean the liquidating trust to be created on or as of the Effective Date and governed by the Plan, the Liquidating Trust Agreement, and this Order. The Liquidating Trust shall be established for the sole purpose of liquidating and distributing the trust assets, in accordance with Treasury Regulation section 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or business. Subject to definitive guidance from the IRS, all parties shall treat the Liquidating Trust as a liquidating trust for all federal income tax purposes.

3. Definition 36b is **added** defining "Liquidating Trust Agreement," to mean the agreement to be dated as of the Effective Date establishing and delineating the terms and conditions of the Liquidating Trust.

4. Definition 36c is **added** defining "Liquidating Trust Beneficiaries," to mean the Claimants of Allowed Claims receiving beneficial interests in the Liquidating Trust pursuant to the Plan and this Order.

5. Definition 36d is **added** defining "Liquidating Trustee," to mean a person, initially Katharine Battaia Clark, who, as part of his or her duties, powers, and responsibilities defined in the Liquidating Trust Agreement, shall be deemed to be and shall have duties, powers, and rights of a trustee under Bankruptcy Code sections 704 and 1106, including, without limitation, prosecuting or settling Causes of Action, addressing, and if deemed appropriate by such trustee, filing and prosecuting objections to and/or settling, Disputed Claims (consistent with the rights of the Liquidating Debtor as set forth in sections 8.3 and 8.4 of the Plan), enforcing contracts, and asserting claims, defenses, offsets and privileges, and shall be deemed to be a representative of the Debtor's Estate in accordance with and for purposes of Bankruptcy Code section 1123. The trustee shall not be required to file any fee applications.

ii. Article IV at section 4.5 of the Plan is amended to add "**provided, however, in any event, all such distributions due hereunder shall be made by and through the Liquidating Trust.**"

iii. Article VI is amended to revise the last paragraph to read as follows:

Following Sale closing, and after the payment of Allowed Claims under Classes 1-4 and the payment of ~~approved~~ administrative expense claims **approved prior to the Effective Date, and upon the Effective Date,** the ~~Liquidating Debtor shall be permitted to utilize~~ **Excluded Assets (including remaining** Sale Proceeds **and the Causes of Action retained and preserved pursuant to Article 16 of the Plan) and all authority granted to the Liquidating Debtor (including but not limited to the authority set out in Sections 8.3 and 8.4 of the Plan) shall vest in the**

**Liquidating Trust and shall be used** to carry out ~~its duties under~~ this Plan as modified by the Confirmation Order~~, including filing claim objections~~. **As a condition to the Effective Date, Henry Stein, the Debtor's CEO, shall execute the Liquidating Trust Agreement on behalf of the Liquidating Debtor, vesting all authority granted to the Liquidating Debtor under this Plan to the Liquidating Trust effective immediately as of the Effective Date. Ms. Clark (in her capacity as Liquidating Trustee) may engage Mr. Stein on an hourly basis to perform tasks at her direction (including, but not limited to, determination of whether to settle or allow Claims with less than $100,000 in controversy); provided that for the avoidance of doubt, any Claim above $100,000, whether scheduled on the Debtor's filed schedules of assets and liabilities, or asserted in a pending filed proof of claim and not otherwise Allowed pursuant to the Plan or other Court order, shall be subject to review by the Liquidating Trustee consistent with sections 8.3 and 8.4 of the Plan). Mr. Stein will not be considered to have any fiduciary obligations to the Liquidating Trust or its beneficiaries in his role as consultant. Nothing herein, however, shall be deemed to modify any fiduciary duties Mr. Stein may have to the Liquidating Debtor after the Effective Date as manager of the Liquidating Debtor until the earlier of his resignation or the Liquidating Debtor's dissolution. The Liquidating Trustee shall have the sole and exclusive right to determine when the Liquidating Trust shall terminate in accordance with the Liquidating Trust Agreement. The Debtor or such other Persons that may have possession or control of such trust assets (including any remaining Sale Proceeds) shall transfer possession or control of such trust assets to the Liquidating Trust and shall cooperate with the Liquidating Trustee on and after the Effective Date by executing documents or instruments to the extent necessary to effectuate such transfers or that shall aid implementation of the deemed transfers under the Plan. All Cash held in the Liquidating Trust shall be invested in accordance with the Liquidating Trust Agreement. The Liquidating Trust shall pay for the reasonable costs of winding down and dissolving the Liquidating Debtor, including the hourly rate of Mr. Stein and the fees and expenses of professionals (legal or otherwise) retained by the Liquidating Debtor; provided, however, that prior to incurring any such costs, the Liquidating Trustee has approved such costs or a budget for such costs, including the anticipated hours of Mr. Stein and any professionals (legal or otherwise) retained by the Liquidating Debtor.**

iv.   Section 9.1 of Article IX is replaced to conform with the definition of "Effective Date" at definition 27 of Article I of the Plan and shall read as follows:

**The Effective Date of the Plan is the first Business Day after entry of the Confirmation Order if the Confirmation Order is not stayed; or, if the Confirmation Order is stayed, the first Business Day following the lifting, dissolution, or removal of such stay, and upon which the conditions to the effectiveness of the Plan set forth in Article VIII hereof are satisfied.** On or

before ten (10) Business Days after the occurrence of the Effective Date, the **Liquidating Trustee** shall mail or cause to be mailed to all holders of Claims and Equity Interests a notice that informs such holders of the following: (a) entry of the Confirmation Order; (b) occurrence of the Effective Date; and (c) such other matters that the **Liquidating Trustee** deems appropriate.

v.   Article IX is amended at section 9.3 to read as follows:

Upon the closing of the Sale, and except as otherwise provided in this Plan, all Purchased Assets purchased in the sale under the APA shall become property of the Prevailing Bidder. Upon the Effective Date, or the closing of the Sale, whichever is sooner, all Excluded Assets **(including any remaining Sale Proceeds and the Causes of Action retained and preserved pursuant to Article 16 of the Plan) and all authority granted to the Liquidating Debtor (including but not limited to the authority set out in Sections 8.3 and 8.4 of the Plan) shall vest in the** Liquidating ~~Debtor~~ **Trust** to be utilized in conformance with and to make payments and/or distributions pursuant to the terms of the Plan **(as modified by the Confirmation Order),** as well as carry out the Liquidating Debtor's duties under the Plan.

vi.   Article XV is amended to **add** the following:

Under Bankruptcy Code section 1145, the Liquidating Trust's issuance of beneficial interests pursuant to the Plan (as modified by the Confirmation Order) shall be exempt from registration under the Securities Act of 1933, as amended, and applicable state and local laws requiring registration of securities. If the Liquidating Trustee determines, with the advice of counsel, that the Liquidating Trust is required to comply with the registration and reporting requirements of the Securities and Exchange Act of 1934, as amended, or the Investment Company Act of 1940, as amended, then the Liquidating Trustee shall take any and all actions to comply with such reporting requirements and file necessary periodic reports with the Securities and Exchange Commission.

Any beneficial interests issued by the Liquidating Trust shall not be certificated and are not transferable (except as otherwise may be provided in the Liquidating Trust Agreement).

Accordingly, the Court **ORDERS**:

1.   **Confirmation**.  The plan is confirmed under 11 U.S.C. § 1191(a).

2.   **Modifications**.  The following Nonmaterial Plan Modifications are hereby approved:

a. Article I of the Plan is amended as follows:

    i. Definition 36 defining "Liquidating Debtor," is amended as follows: **"means the Debtor on and after the Effective Date. For the avoidance of doubt, all references to 'Liquidating Debtor' in the Plan shall be interpreted to allow all powers, rights, claims, defenses, assets, and everything whatsoever granted to the Liquidating Debtor to inure to the benefit of the Liquidating Trust."**

    ii. Definition 36a is **added** defining "Liquidating Trust," to mean the liquidating trust to be created on or as of the Effective Date and governed by the Plan, the Liquidating Trust Agreement, and this Order. The Liquidating Trust shall be established for the sole purpose of liquidating and distributing the trust assets, in accordance with Treasury Regulation section 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or business. Subject to definitive guidance from the IRS, all parties shall treat the Liquidating Trust as a liquidating trust for all federal income tax purposes.

    iii. Definition 36b is **added** defining "Liquidating Trust Agreement," to mean the agreement to be dated as of the Effective Date establishing and delineating the terms and conditions of the Liquidating Trust.

    iv. Definition 36c is **added** defining "Liquidating Trust Beneficiaries," to mean the Claimants of Allowed Claims receiving beneficial interests in the Liquidating Trust pursuant to the Plan and this Order.

    v. Definition 36d is **added** defining "Liquidating Trustee," to mean a person, initially Katharine Battaia Clark, who, as part of his or her duties, powers, and responsibilities defined in the Liquidating Trust Agreement, shall be deemed to be and shall have duties, powers, and rights of a trustee under Bankruptcy Code sections 704 and 1106, including, without limitation, commencing, prosecuting or settling Causes of Action, addressing, and if deemed appropriate by such trustee, filing and prosecuting objections to and/or settling, Disputed Claims (consistent with the rights of the Liquidating Debtor as set forth in sections 8.3 and 8.4 of the Plan), enforcing contracts, and asserting claims, defenses, offsets and privileges, and shall be deemed to be a representative of the Debtor's Estate in accordance with and for purposes of Bankruptcy Code section 1123. The trustee shall not be required to file any fee applications.

b. Article IV at section 4.5 of the Plan is amended to add **"provided, however, in any event, all such distributions due hereunder shall be made by and through the Liquidating Trust."**

   c.   Article VI is amended to revise the last paragraph to read as follows:

Following Sale closing, and after the payment of Allowed Claims under Classes 1-4 and the payment of ~~approved~~ administrative expense claims **approved prior to the Effective Date**, **and** **upon the Effective Date,** the ~~Liquidating Debtor shall be permitted to~~ ~~utilize~~ **Excluded Assets (including remaining** Sale Proceeds **and the Causes of Action retained and preserved pursuant to Article 16 of the Plan) and all authority granted to the Liquidating Debtor (including but not limited to the authority set out in Sections 8.3 and 8.4 of the Plan) shall vest in the Liquidating Trust and shall be used** to carry out ~~its duties under~~ this Plan as modified by the Confirmation Order~~, including filing claim objections~~. **As a condition to the Effective Date, Henry Stein, the Debtor's CEO, shall execute the Liquidating Trust Agreement on behalf of the Liquidating Debtor, vesting all authority granted to the Liquidating Debtor under this Plan to the Liquidating Trust effective immediately after the Effective Date. Ms. Clark (in her capacity as Liquidating Trustee) may engage Mr. Stein on an hourly basis to perform tasks at her direction (including, but not limited to, determination of whether to settle or allow Claims with less than $100,000 in controversy); provided that for the avoidance of doubt, any Claim above $100,000, whether scheduled on the Debtor's filed schedules of assets and liabilities, or asserted in a pending filed proof of claim and not otherwise Allowed pursuant to the Plan or other Court order, shall be subject to review by the Liquidating Trustee consistent with sections 8.3 and 8.4 of the Plan). In his role as consultant, Mr. Stein will not be considered to have any fiduciary obligations to the Liquidating Trust or its beneficiaries. Nothing herein, however, shall be deemed to modify any fiduciary duties Mr. Stein may have to the Liquidating Debtor after the Effective Date as manager of the Liquidating Debtor until the earlier of his resignation or the Liquidating Debtor's dissolution. The Liquidating Trustee shall have the sole and exclusive right to determine when the Trust shall terminate in accordance with the Liquidating Trust Agreement. The Debtor or such other Persons that may have possession or control of such trust assets (including any remaining Sale Proceeds) shall transfer possession or control of such trust assets to the Liquidating Trust and shall cooperate with the Liquidating Trustee by executing documents or instruments necessary to effectuate such transfers or that shall aid implementation of the deemed transfers under the Plan. All Cash held in the Liquidating Trust shall be invested in accordance with the Liquidating Trust Agreement. The Liquidating Trust shall pay for the reasonable costs of winding down and dissolving the Liquidating Debtor, including the hourly rate of Mr. Stein and the fees and expenses of professionals (legal or otherwise) retained by the Liquidating Debtor; provided, however, that prior to incurring any such costs, the Liquidating Trustee has approved such costs or a budget for such costs, including the anticipated hours of Mr. Stein and any professionals (legal or otherwise) retained by the Liquidating Debtor.**

d.  Section 9.1 of Article IX is replaced to conform with the definition of "Effective Date" at definition 27 of Article I of the Plan   and shall read as follows:

**The Effective Date of the Plan is the first Business Day after entry of the Confirmation Order if the Confirmation Order is not stayed; or, if the Confirmation Order is stayed, the first Business Day following the lifting, dissolution, or removal of such stay, and upon which the conditions to the effectiveness of the Plan set forth in Article VIII hereof are satisfied.** On or before ten (10) Business Days after the occurrence of the Effective Date, the **Liquidating Trustee** shall mail or cause to be mailed to all holders of Claims and Equity Interests a notice that informs such holders of the following: (a) entry of the Confirmation Order; (b) occurrence of the Effective Date; and (c) such other matters that the **Liquidating Trustee** deems appropriate.

e.  Article IX is amended at section 9.3 to read as follows:

Upon the closing of the Sale, and except as otherwise provided in this Plan, all Purchased Assets purchased in the sale under the APA shall become property of the Prevailing Bidder. Upon the Effective Date~~, or the closing of the Sale, whichever is sooner,~~ all Excluded Assets **(including any remaining Sale Proceeds and the Causes of Action retained and preserved pursuant to Article 16 of the Plan and all authority granted to the Liquidating Debtor (including but not limited to the authority set out in Sections 8.3 and 8.4 of the Plan) shall vest in the** Liquidating ~~Debtor~~ **Trust** to be utilized in conformance with and to make payments and/or distributions pursuant to the terms of the Plan **(as modified by the Confirmation Order)**~~, as well as carry out the Liquidating Debtor's duties under the Plan~~.

f.  Article XV is amended to **add** the following:

Under Bankruptcy Code section 1145, the Liquidating Trust's issuance of beneficial interests pursuant to the Plan (as modified by the Confirmation Order) shall be exempt from registration under the Securities Act of 1933, as amended, and applicable state and local laws requiring registration of securities. If the Liquidating Trustee determines, with the advice of counsel, that the Liquidating Trust is required to comply with the registration and reporting requirements of the Securities and Exchange Act of 1934, as amended, or the Investment Company Act of 1940, as amended, then the Liquidating Trustee shall take any and all actions to comply with such reporting requirements and file necessary periodic reports with the Securities and Exchange Commission.

Any beneficial interests issued by the Liquidating Trust shall not be certificated and are not transferable (except as otherwise may be provided in the Liquidating Trust Agreement).

3. **Binding Effect of Plan**. Pursuant 11 U.S.C. § 1141(a), except as provided in §§ 1141(d)(2) and (3), the provisions of the Plan, as modified by this Order, as of the Effective Date bind the Debtor, the Liquidating Debtor, the Liquidating Trust, the Liquidating Trustee, any Creditor, and any holder of Equity Interests of the Debtor, whether or not the Claim or Equity Interest of such party is impaired under the Plan and whether or not such Creditor has accepted the Plan. All references in this Order to the Liquidating Debtor shall be interpreted to allow all powers, rights, claims, defenses, assets, and everything whatsoever granted to or vested in the Liquidating Debtor to inure to the benefit of the Liquidating Trust.

4. **Re-vesting of Property**. Pursuant to 11 U.S.C. § 1141(b), except as otherwise provided in the Plan or in this Confirmation Order, as of the Effective Date, all of the property of the estate vests in the Liquidating Trust pursuant to 9.3 of the Plan, as modified by this Order. Except as provided in §§ 1141(d)(2) and (3) and except as otherwise provided in the Plan or in this Order, after confirmation of the Plan, the property dealt with by the Plan is free and clear of all claims and interests of creditors. All parties shall treat the Liquidating Trust as a liquidating trust for federal income tax purposes with the Liquidating Trust Beneficiaries being the beneficiaries, grantors, and owners of the Liquidating Trust. The vesting in or transfer of assets to the Liquidating Trust shall be treated by all parties for all federal income tax purposes as if all the transferred assets had been first transferred to the Liquidating Trust Beneficiaries and then transferred by such beneficiaries to the Liquidating Trust. The transfer of such assets does not constitute a voidable transfer under the Bankruptcy Code or applicable nonbankruptcy law.

5. **Post-Confirmation Operation of Business**. Except as otherwise provided in the Plan or in this Confirmation Order, on and after the Effective Date, the Liquidating Debtor may use, acquire, and dispose of property free of any restrictions of the Bankruptcy Code and

Bankruptcy Rules and in all respects as if there were no pending case under any chapter or provisions of the Bankruptcy Code.  Each of the Liquidating Trustee and the Liquidating Debtor is entitled to retain and compensate professionals without the necessity of further approval of this Court.  Except as set forth in the Plan concerning objections to Claims, the Liquidating Trustee may also settle or compromise any Claims without Court approval.

6.      **Injunction and Discharge**.  Except as otherwise expressly provided in the Plan or in this Confirmation Order, as of the Effective Date: (i) the Debtor shall not be discharged from any debt pursuant to 11 U.S.C. § 1141(d); and (ii) all holders of Claims against the Debtor are enjoined from taking any action to interfere with the implementation or consummation of the Plan to the fullest extent provided by 11 U.S.C. § 524(a).  Additionally, all holders of Claims, all holders of Equity Interests, and all other parties in interest in the Bankruptcy Case shall be enjoined from seeking payment on their Claims or Interest from the Liquidating Debtor except as otherwise provided in the Plan.

7.      **Disbursing Agent**.  Notwithstanding anything to the contrary in the Plan, the Liquidating Trustee is named as Disbursing Agent (and shall be deemed the Disbursing Agent under the Plan) and must make all post-Effective Date payments to holders of Allowed Claims as required by the Plan.

8.      **United States Trustee Guidelines**.  The Liquidating Debtor must comply with the guidelines set forth by the Office of the United States Trustee until the closing of this case by the issuance of a Final Decree by the Bankruptcy Court.

9.      **Effect of Confirmation Order on Plan**.  The failure to reference or address all or part of any particular provision of the Plan herein has no effect on the validity, binding effect, or enforceability of such provision and such provision has the same validity, binding effect, and

enforceability as every other provision of the Plan.  To the extent that any inconsistencies exist between the terms of the Plan and this Confirmation Order, the terms of this Confirmation Order shall control.

10.     **Executory Contracts and Leases**.  Except as otherwise provided in a separate order of the Court, all executory contracts and unexpired leases not otherwise assumed are deemed rejected as of the Effective Date.

11.     **Rejection Damages Claims Deadline; Plan Claims and Notices**.  The deadline for filing Rejection Damages Claims shall be thirty (30) days from the Effective Date, and any such claim shall be filed with the Court and served on the Liquidating Trustee by serving a copy via e-mail, U.S. mail, or overnight delivery to Katharine B. Clark, Esq., kclark@thompsoncoburn.com and smeiners@thompsoncoburn.com, c/o Thompson Coburn LLP, 2100 Ross Avenue, Suite 3200, Dallas, TX 75201.  All other claims and notices required to be served on the Liquidating Debtor shall similarly be provided via e-mail, U.S. mail or overnight delivery on the Liquidating Trustee.

12.     **Service of Confirmation Order**.  Counsel for the Debtor is directed to serve a copy of this Order on all parties and file a certificate of service within five (5) days of the entry of this Order.

13.     **Documents Required to Effectuate Plan**.  The Debtor is authorized to execute any and all documents reasonably required to effectuate the provisions of the Plan or prior Orders of this Court, and is directed to enter into the Liquidating Trust Agreement as defined herein.

14.     **Discharge of the Subchapter V Trustee**.  Pursuant to 11 U.S.C. § 1183, the service of the Subchapter V Trustee in the case shall terminate when the Plan has been substantially consummated, except that the United States Trustee may reappoint a trustee if needed for

performance of duties under § 1183(b)(3)(C) and § 1185(a). Not later than 14 days after the Plan

is substantially consummated, the Liquidating Trustee shall file with the Court and serve on the

Subchapter V Trustee, the United States Trustee, and all parties in interest notice of such

substantial consummation. The Liquidating Trustee must file the Local Form "Final Report and

Motion for Entry of Final Decree" on the later of: (a) substantial consummation of the Plan, or (b)

entry of a final order resolving all Disputed Claims.

15.    **Jurisdiction**. The Bankruptcy Court retains jurisdiction of the Bankruptcy Case

and all matters arising in, or related to, the Bankruptcy Case to the fullest extent permitted by law,

including to:

a.     Resolve issues with respect to the Liquidating Debtor's substantial consummation of the Plan and to the extent the Liquidating Debtor or Liquidating Trustee seeks to amend or modify the Plan;

b.     Resolve any motions, adversary proceedings, or contested matters that are pending as of the date of substantial consummation;

c.     Adjudicate Causes of Action preserved pursuant to Article 16 of the Plan;

d.     Adjudicate objections to Claims;

e.     Resolve any issues with respect to the Liquidating Trust and Liquidating Trust Agreement;

f.     Resolve disputes with respect to any and all injunctions created as a result of confirmation of the Plan;

g.     Adjudicate modifications of the Plan under 11 U.S.C. § 1193;

h.     Review and consider issues associated with the Liquidating Trustee's final report and entry of final decree, and to enter a final decree; and

      i.      Enter such orders as the Court deems necessary or appropriate with respect to interpretation or enforcement of the Plan (as modified hereunder).

Signed on 07/22/2025

_Brenda T. Rhoades_   SD

HONORABLE BRENDA T. RHOADES,
CHIEF UNITED STATES BANKRUPTCY JUDGE

**Agreed by:**

By: */s/ Vickie L. Driver*
Vickie L. Driver
State Bar No. 24026886
Christina W. Stephenson
State Bar No. 24049535
**DRIVER STEPHENSON, PLLC**
13155 Noel Road, Ste. 900
Dallas, TX 75240
Telephone: 214.910.9558
Email: vickie@driversteplaw.com
Email: crissie@driversteplaw.com

**COUNSEL FOR DEBTOR**

**and**

*By: /s/ Daniel P. Winikka*
Daniel P. Winikka (TX 00794873)
**WINIKKA LAW, PLLC**
6060 North Central Expressway, Suite 500
Dallas, TX 75206
Telephone:  (469) 384-7710
Facsimile:   (469) 384-7709
dan@danwinlaw.com

**COUNSEL FOR HENRY STEIN**

**And**

By: */s/ Katharine Battaia Clark*
Katharine Battaia Clark
Texas Bar No. 24046712
**THOMPSON COBURN LLP**
2100 Ross Avenue, Suite 3200
Dallas, Texas 75201
Phone: 972-629-7100
Fax: 972-629-7171
kclark@thompsoncoburn.com

**SUBCHAPTER V TRUSTEE**

**Agreed as to form:**

By: */s/ Daniel B. Besikof*
Daniel B. Besikof
New York Bar No. 4314084
dbesikof@lowenstein.com
**LOWENSTEIN SANDLER LLP**
1251 Avenue of the Americas
New York, New York 10020
Tel: (212) 262-6700
Fax: (212) 262-7402

**COUNSEL FOR AWARE PRODUCTS, LLC d/b/a VOYANT BEAUTY**

**And**

By: *J. Mark Chevallier*
J. Mark Chevallier
State Bar No. 04189170
mchevallier@romclaw.com
**ROCHELLE MCCULLOUGH, LLP**
901 Main Street, Suite 3200
Dallas, Texas 75202
Tel: (214) 953-0182
Fax: (888) 467-5979

**COUNSEL FOR MNO INVESTOR HOLDINGS, LLC**

Counsel must serve a copy of the signed order on all parties served with the motion and must file with the court a certificate of service conforming with Local Rule 2002-1(F).

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
PLANO DIVISION**

| | | |
|---|---|---|
| In re: | § | |
| | § | **Case No. 24-41929** |
| **MACADAMIA BEAUTY, LLC,** | § | |
| | § | **Chapter 11** |
| | § | |
| Debtor. | § | **Subchapter V** |

<u>**DEBTOR'S SECOND AMENDED SUBCHAPTER V PLAN OF REORGANIZATION**</u>

Vickie L. Driver
State Bar No. 24026886
Christina W. Stephenson
State Bar No. 24049535
**ELLIOT, THOMASON & GIBSON, LLP**
511 N. Akard St. Suite 202
Dallas, TX 75201
Telephone: 469.809.6730
Email: vickie@etglaw.com
Email: crissie@etglaw.com

**COUNSEL TO THE DEBTOR**

Dated: May 23, 2025

# TABLE OF CONTENTS

Introduction……………………………………………………………………………………3

Article I. Definitions and Interpretation…………………………………………………………8

Article II. Classification of Claims and Equity Interests……………………………………..14

Article III. Provisions for the Treatment of Unclassified Claims………………………………15

Article IV. Provisions for the Treatment of Classified Claims…………………………………16

Article V. Voting on the Plan…………...……………………………………………………17

Article VI. Sale……………………………………………………………………………17

Article VII. Subchapter V Requirements Satisfied……...…………………………………..…..18

Article VIII. Claims Objection Process…...………………………………………………18

Article IX. Effect of Confirmation and Plan Injunction…...……………………………...19

Article X. Executory Contracts and Leases...…………………………………………...21

Article XI. Plan Feasibility…………………………………………………………………...21

Article XII. Alternatives to the Plan and Plan Risks…………………………………..……...21

Article XIII. Events of Default and Effects Thereof...…………………………………...…21

Article XIV. Discharge...………………………………………………………………...22

Article XV. Tax Consequences...…………………………………………………………23

Article XVI. Miscellaneous Provisions...…………………………………………………...23

# INTRODUCTION

## A.    History of Debtor's Business Operations and Events Leading to Bankruptcy

Debtor Macadamia Beauty, LLC (the "Debtor" or "Macadamia") is in the business of selling and marketing premium liquid haircare products.

In 2023 Macadamia was in need of working capital financing to fund inventory for sales and weather the unpredictable "lumpiness" of orders from its key customers. Macadamia entered into negotiations with lender Rosenthal & Rosenthal of California, Inc. ("Rosenthal") on or about March 17, 2023. After extensive discussion and review of financial projections, Macadamia and Rosenthal entered into a Financing Agreement dated as of October 31, 2023 and funded on or about November 17, 2023, whereby Rosenthal committed to an asset backed loan to Macadamia with a maximum of $2.5 million [.  Macadamia granted Rosenthal a first priority lien in substantially all of Macadamia's assets. In addition, Rosenthal's loan claim was further secured by a $300,000 certificate of deposit (the "CD"). Pursuant to the cash management provisions of the Financing Agreement, all of Macadamia's accounts receivable and other payments were made into an account controlled by Rosenthal (the "Deposit Account") pursuant to a Deposit Account Control Agreement ("DACA") between Rosenthal and Macadamia held at Bank of America. Rosenthal made periodic sweeps of the Deposit Account to pay down the balance owed. Thereafter, provided that Rosenthal was satisfied with financial reporting and collateral provided by Macadamia, Rosenthal would authorize payment into Macadamia's operating account at Pacific Premier Bank. Macadamia would then use the funds in the operating account for its operations, including funding payroll.

Rosenthal materially delayed lending starting in April 2024 and through the next four months. The alleged basis for the April 204 reduction was Rosenthal's belief that slow sales indicated that inventory lacked the 50% of COGS borrowing value. Macadamia provided information about orders that could not be filled because the products were out of stock.

In response, Rosenthal expressed certain concerns, including (1) that funds advanced by Rosenthal were being used to fund operating losses in early 2024; (2) that the material Nazih Beauty receivable was no longer covered by insurance; and (3) that the decrease in sales reduced Macadamia's inventory below the assigned collateral value.

Reduced lending led to further reductions in inventory, which in turn led to more orders that could not be filled because the products were out of stock and additional lost sales.

Rosenthal sent a reservation of rights letter on July 23, 2024 outlining their concerns. Among these concerns, Rosenthal indicated that during 2023 the company lost $300,000 in EBITDA when a $300,000 gain was originally projected.  In this assertion, Rosenthal ignores the financial projections they received on October 20, 2023 which projected a $489.3k loss for 2023. Macadamia proposed alternatives for resolving defaults alleged by Rosenthal while continuing business operations. None were acceptable to Rosenthal.  By July 2024 the cascading effect of reduced funding irrevocably undermined Macadamia's inventory to fill sales in the all important summer season.  Based on the reduced results caused by seasonality and reductions in funding,

**DEBTOR'S SECOND AMENDED SUBCHAPTER V PLAN OF REORGANIZATION**

Rosenthal then made clear to Macadamia that Rosenthal was seeking a 12-week orderly liquidation less than 9 months after the first funding.

On August 5, 2024 Rosenthal provided email notice to Macadamia that no further funds would be provided, including none for payroll until a 13 week orderly liquidation plan was "mutually" agreed. As Rosenthal refused to transfer cash paid by Macadamia's customers into the DACA account under Rosenthal's control, Macadamia was unable to fund payroll on August 15, 2024 when due. Macadamia provided Rosenthal with a detailed go-forward plan on August 15, 2024, Rosenthal declined to even review the plan. Thereafter, on August 19, 2024, 10 business days after the August 5, 2024 email, Rosenthal provided Macadamia with formal notice of default. This was only 3 weeks after sending the reservation of rights letter, 4 months from the beginning of Rosenthal's restriction on credit availability and barely 9 months after wiring the first funds on November 17, 2023.

In order to free up funds to pay its employees and to otherwise preserve the value of the business for the benefit of all creditors, Macadamia made the decision to file for bankruptcy protection and reorganize under Chapter 11, Subchapter V of the United States Bankruptcy Code.

## B.     The Debtor's Bankruptcy Case

The Debtor filed its Subchapter V bankruptcy petition on August 19, 2024 (the "Petition Date"). On August 28, 2024, the Bankruptcy Court held a hearing on the Debtor's "first-day" motions concerning prepetition wages and benefits and the interim use of cash collateral. The Court subsequently entered an order authorizing the prepetition payment of employee wages and benefits [Doc. No. 31] and also entered the *First Interim Cash Collateral Order* [Doc. No. 33].

On August 22, 2024, the United States Trustee filed a notice [Doc. No. 22] that Katharine Clark was appointed Subchapter V Trustee in the case.

The Debtor subsequently filed an application to employ Ross, Smith & Binford, PC ("RSB") as its bankruptcy counsel [Doc. No. 52] which the Court granted by order [Doc. No. 70] entered on October 10, 2024.

Thereafter, the Debtor continued to operate as a debtor-in-possession in attempt to stabilize the business and work toward ultimate emergence from bankruptcy. This included extensive negotiations between the Debtor and Rosenthal regarding the use of cash collateral, resulting in the entry of three interim cash collateral orders [Doc. Nos. 54 and 72] and a final cash collateral order [Doc. No. 84]. The terms of these orders provided protections to Rosenthal including $10,000 per month adequate protection payments, weekly financial reporting, and an agreed draw-down by Rosenthal of $250,000 of the $300,000 CD to apply toward Rosenthal's claim.

During the three weeks following the Petition Date, the Debtor was not permitted to access the full amount of funds in the Deposit Account. Denial of funds at that critical juncture caused the Debtor significant and continued long-lasting, financial hardship as detailed in the Debtor's *Motion for Entry of an Order Extending the Time Period to File a Plan of Reorganization Pursuant to 11 U.S.C. § 1189(b)* [Doc. No. 80] (the "Motion to Extend") filed by the Debtor on November 4, 2024. The loss of business caused a loss of at least $360,000.00 of additional sales for that period.  The lost sales snowballed:  fewer sales meant less receivables, in turn meant less cash collections, less inventory that could be purchased and so even more a downward spiral of sales as more and more business was lost from the lack of inventory and out of stocks. By the Motion to Extend, the Debtor sought entry of an order extending the deadline to file a plan. Rosenthal filed an objection to the Motion to Extend [Doc. No. 90]. On November 13, 2024, the Court held a contested evidentiary hearing on the Motion to Extend. The Court determined that the Debtor established, pursuant to Bankruptcy Code section 1189(b), that the Debtor's need for additional time was "attributable to circumstances for which the debtor should not justly be held accountable."  The Court thereafter entered an order [Doc. No. 92] extending the Debtor's deadline to file a plan to January 17, 2025.

The Debtor filed a plan (the "Original Plan") by the extended deadline [Doc. No. 105]. Rosenthal voiced objections to the proposed Third-Party Financing contained in the Original Plan, and responded in kind by filing a Motion to Convert the Case to Chapter 7 [Doc. No. 119] on February 12, 2025 (the "Motion to Convert"). An Objection to the Motion to Convert was filed by Aware Products, LLC d/b/a Voyant Beauty ("Voyant") on February 26, 2025 [Doc. No. 129].  For context, Voyant is owed $368,737.80 in administrative priority claims and an additional $1,519,898.57 in unsecured creditor claims.  Rosenthal's principal due (excluding legal charges) was $212,602 as of the date of those motions. Rosenthal's interest has been and continues to be paid current as part of the Court's cash collateral orders.

The Debtor filed its Objection and Response to the Motion to Convert by the agreed upon extended response deadline on March 6, 2025 [Doc. No. 136].

RSB filed a Motion to Withdraw as Counsel on February 24, 2025 [Doc. No. 127]. the Debtor filed an Application to Employ Elliott, Thomason, & Gibson, LLP as Substitute Counsel on February 28, 2025 [Doc. No. 132] (the "ETG Application").  Rosenthal objected to the ETG Application on March 14, 2025 [Doc. No. 137].

Rosenthal declined to transfer cash in their control for three weeks save payroll (which evidences that Rosenthal had the ability to transfer cash to the estate), contested the October cash collateral order necessitating Court time, contested the extension of the time to file a plan of reorganization, required payment of $15,500 wrongly paid to their account to avoid yet another contested cash collateral hearing, demanded increases in their principal protection payments from $4,500 per month to $15,536 in week 13, to $10,000 per month to avoid further contested cash collateral hearings, cumulatively removing $329,036 from the estate ($348,764 including interest) objected to the insiders proposal to provide financing, objected to hiring ETG, objected to the use

**DEBTOR'S SECOND AMENDED SUBCHAPTER V PLAN OF REORGANIZATION**

of Estate funds to hire ETG notwithstanding their intent to charge the estate for not one but two legal firms, not paid down any other pre-petition creditors and sought this motion to convert.

The Motion to Convert and the ETG Application were set for hearing on March 25, 2025. Agreed Orders were entered on the Motion to Convert [Doc. No. 151] and the ETG Application [Doc. No. 153]. The Agreed Order on the Motion to Convert set out various deadlines for Plan confirmation and closing of any sale transaction. ETG is now counsel for the Debtor.

After Rosenthal objected to the funding proposal, the Debtor vigorously pursued new financing. No outside funding came to fruition. The Debtor simultaneously pursued potential sale efforts. This included (a) creating a data room open to all parties who signed a provided nondisclosure agreement, (b) advising beauty industry leaders that the company was soliciting proposals and asking them to inform their networks, (c) sending the nondisclosure agreement to twelve (12) interested parties; (d) providing access to a data room to nine (9) potential purchasers which has led to forty-five (45) views of the data room and twenty-four (24) downloads of the materials. The Debtor received two (2) draft letters of intent to purchase substantially all of the Debtor's assets.

The Debtor filed a *Motion to Approve Bidding Procedures for the Sale of all or Substantially all of the Debtor's Assets, as well as Approval of Designation of a Stalking Horse Bidder and Bid Protections, and Sale* on April 17, 2025 [Docket No. 161]. The Court entered the order approving the bidding procedures on April 28, 2025 [Docket No. 180]. The Debtor timely served notices of all bid procedure deadlines and received one qualifying bid in addition to that of the Stalking Horse Bidder. An auction was held on May 5, 2025 and the Stalking Horse Bidder, RCB Equities #1, LLC was the Prevailing Bidder, with a highest and best Qualified Acquisition proposal for the cash amount of $3,205,000.00.

A hearing to approve the Sale was conducted on May 13, 2025. The Court approved the sale, entering the order on May 16, 2025 [Docket No. 191] (the "Sale Order"). The Debtor anticipates closing the sale transaction prior to May 30, 2025. Proceeds from the Sale will be used to fund the Plan as set forth herein.

On or about May 12, 2025, after months of negotiations, the Debtor and Rosenthal reached a global settlement regarding the remaining issues between the parties. The terms of the settlement (the "Settlement") between the Debtor and Rosenthal are as follows:

a) Settlement Payment: No later than ten (10) days after the entry of the order approving this Settlement, the Debtor shall transfer to Rosenthal the amount of $200,000 (the "Legal Fee Claim") for reimbursement of the attorneys' fees and expenses incurred by Rosenthal, which amount shall be fully secured by the sale proceeds pending payment in full;

b)    <u>Release of Rosenthal</u>: The Debtor irrevocably and unconditionally releases and forever discharges Rosenthal, together with Rosenthal's affiliates, owners, investors, principals, members, shareholders, officers, directors, employees, agents, and legal representatives (collectively, the "<u>Rosenthal Released Parties</u>"), from any and all actions, causes of action, claims, suits, demands, or obligations whatsoever that the Debtor may have against the Rosenthal Released Parties including, but not limited to, any and all actions, causes of action, claims, suits, demands, or obligations whatsoever arising out of or related to (i) the Financing Agreement, (ii) any other agreement by and between the Debtor and Rosenthal, (iii) the Debtor's attempt to access cash from the DACA Account, (iv) any claim or tort associated with Rosenthal's lending practices, (v) Rosenthal's actions to collect the Obligations, (vi) any claim or cause action reserved and retained against Rosenthal in the *Debtor's Amended Subchapter V Plan of Reorganization* [Docket No. 158] and any subsequently filed amended Subchapter V Plan of Reorganization ("<u>Plan</u>"), and (vii) 11 U.S.C. §§ 510, 547, 548, 549, and 550; *provided, however,* that the foregoing does not release any right or obligation contained in this Settlement;

c)    <u>Release of Debtor</u>.  Upon Rosenthal's receipt of payment of the Legal Fee Claim and the amount to be paid to Rosenthal under the Agreed Order, Rosenthal releases and discharges the Debtor and its estate of all claims and causes of action that Rosenthal ever had or may have, whether known or unknown, whether asserted or not asserted, arising in law, contract or in equity, arising out of or related to the Financing Agreement and any other agreement by and between the Debtor and Rosenthal; *provided, however,* that the foregoing does not release any right or obligation contained in this Settlement;

d)    <u>Plan</u>.  Upon the Court's approval of this Settlement, Rosenthal shall withdraw its objection to the Debtor's Plan and shall change its vote to support the Plan (assuming the Plan has no provision which is contrary to the full implementation of this Settlement); and

e)    <u>Agreed Order</u>.  Rosenthal will not exercise its rights under the Agreed Order to file a notice of breach based on the Debtor's failure to confirm the Plan on or before May 15, 2025 or the failure of the Plan's effective date to occur on or before May 30, 2025.

Contemporaneous with the filing of this Plan, the Debtor and Rosenthal are filing a Motion to approve the foregoing settlement. The proposed settlement results in a savings of at least $360,000.00 to the estate (as well as additional professional fees for any avoided litigation over the Legal Fee Claim), and increased funds for distribution to unsecured creditors.

## C.    Summary of the Plan

This, the Debtor's Amended Subchapter V Plan of Reorganization (the "<u>Plan</u>"), provides for a sale of substantially all of the Debtor's assets (the "<u>Sale</u>"). The Debtor is seeking to confirm a consensual plan of reorganization so that all payments to creditors required under the Plan will be made directly by the Liquidating Debtor to its creditors. However, if the Debtor is required to

seek confirmation of the Plan pursuant to Bankruptcy Code section 1191(b), the Liquidating Debtor will seek approval from the Court to act as the Disbursing Agent under the Plan pursuant to Bankruptcy Code section 1191(b). This will reduce administrative expenses, thus providing greater payout to general unsecured creditors. The Debtor asserts that cause exists for the Court to allow the Liquidating Debtor to act as Disbursing Agent even if confirmed pursuant to Bankruptcy Code section 1191(b).

The Plan provides for different classes that are either "unimpaired," meaning that the Claims of such Creditors are not affected, or "impaired," meaning that the Plan provides for the modification of the Creditors' Claims.

Claimants in Classes 1, 2, and 4 are unimpaired under the Plan and such Classes are deemed to have accepted the Plan.

Claimants in Classes 3, 5, and 6 are impaired as that term is defined by Bankruptcy Code section 1124. As Class 6 is impaired but deemed rejected, the Debtor is seeking acceptance of the Plan by Claimants in Classes 3 and 5.

## D.     Best Interests of Creditors

Bankruptcy Code section 1129(a)(7) requires that each impaired class of claims or interests accept the Plan or receive or retain under the Plan on account of such claim or interest, property of a value as of the Effective Date of the Plan, that is not less than the amount that such holder would so receive or retain if the Debtor was liquidated under Chapter 7 of the Bankruptcy Code. If Bankruptcy Code section 1111(b)(2) applies to the claims of such class, each holder of a claim of such class will receive or retain under the Plan, on account of such claim, property of a value, as of the Effective Date of the Plan, that is not less than the value of such holder's interest in the estate's interest in the property that secures such claims. In order for the Plan to be confirmed, the Bankruptcy Court must determine that the Plan is in the best interests of the Debtor's creditors. Accordingly, the proposed Plan must provide the Debtor's creditors with more than they would receive in a Chapter 7 liquidation. It is anticipated that in a Chapter 7 liquidation, the Debtor's creditors, other than the secured creditors, would receive nothing. Because the Plan proposes a substantial dividend to all creditors, such creditors are receiving more than they would receive in a Chapter 7 liquidation. Accordingly, the Plan satisfies the requirements of Bankruptcy Code section 1129(a)(7).

**ARTICLE I**
**DEFINITIONS AND INTERPRETATION**

**RULES OF INTERPRETATION**

Unless otherwise specified, all Section, Article, and Exhibit references in this Plan are to the respective Section in, Article of, or Exhibit to this Plan, as the same may be amended, waived, or modified from time to time. Words denoting the singular number shall include the plural number

and vice versa. In construing this Plan, the rules of construction set forth in Bankruptcy Code section 102 shall apply.

In computing any period of time prescribed or allowed by this Plan, the provisions of Bankruptcy Rule 9006 shall apply.

Where a creditor or a holder of any right under this Plan is named by name, such naming shall include any successor-in-interest to any right of such creditor.

## DEFINITIONS

Terms and phrases, whether capitalized or not, that are used and not defined in this Plan, but that are defined in the Bankruptcy Code, have the meanings ascribed to them in the Bankruptcy Code. Unless otherwise provided in this Plan, the following terms have the respective meanings set forth below, and such meanings shall be equally applicable to the singular and plural forms of the terms defined, unless the context otherwise requires.

1.      "**Administrative Claim**" means a Claim for any cost or expense of administration of the Bankruptcy Case under Bankruptcy Code section 503(b), including, without limitation, any fees or charges assessed against the Estate pursuant to 28 U.S.C. § 1930, and further including a Professional Claim.  For the avoidance of doubt, Administrative Claims do not include Secured Tax Claims.

2.      "**Administrative Claims Bar Date**" means the day that is thirty (30) days after the Confirmation Order becomes a Final Order. If such date falls on a Saturday or Sunday, the Administrative Claims Bar Date shall be the following Monday.

3.      "**Administrative Tax Claim**" means any ad valorem tax claim asserted against, or payable by, the Debtor or the Estate or their property for or an account of a period after the Petition Date, specifically excluding Secured Tax Claims.

4.      "**Allowed**," as it relates to any type of Claim provided for under this Plan, means a Claim:

     (i)     which has been scheduled as undisputed, noncontingent, and liquidated in the Schedules in an amount other than zero or unknown, and as to which:

          a.  no proof of Claim has been timely filed; and

          b.  no objection has been timely filed (as determined by applicable deadlines contained in this Plan, including the Claims Objection Deadline);

     (ii)    as to which a proof of Claim has been timely filed and either:

**DEBTOR'S SECOND AMENDED SUBCHAPTER V PLAN OF REORGANIZATION**

a.  no objection thereto has been timely filed (as determined by applicable deadlines contained in this Plan, including the Claims Objection Deadline); or

b.  such Claim has been allowed (but only to the extent allowed) by a Final Order of the Bankruptcy Court;

(iii)   which has been expressly allowed under the provisions of this Plan; or

(iv)    which has been expressly allowed by Final Order of the Bankruptcy Court.

5.   "**Allowed Administrative Claim**" means: (i) an Administrative Claim that has been Allowed (but only to the extent Allowed), if approval from the Bankruptcy Court is required in order to Allow the same; or (ii) an Administrative Claim which: (a) is incurred by the Debtor after the Petition Date in the ordinary course of business operations or pursuant to an order entered by the Bankruptcy Court granting automatic Administrative Claim status; (b) is not disputed by the Debtor; and (c) does not require approval of the Bankruptcy Court to become Allowed.

6.   "**APA**" means, that certain Asset Purchase Agreement between the Prevailing Bidder and the Debtor which governs the terms of the Sale in addition to the Sale Order.

7.   "**Avoidance Actions**" means any and all rights, claims, or actions which the Debtor may assert on behalf of the Estate under Chapter 5 of the Bankruptcy Code, including actions under one or more provisions of sections 328, 542, 544, 545, 546, 547, 548, 549, 550, 551, and/or 553 of the Bankruptcy Code.

8.   "**Bankruptcy Case**" means the Chapter 11, Subchapter V bankruptcy case of Macadamia Beauty, LLC, Case No. 24-41929, pending in the United States Bankruptcy Court for the Eastern District of Texas, Plano Division.

9.   "**Bankruptcy Code**" means 11 U.S.C. §§ 101 *et seq.*, in effect as of the Petition Date and as may have been or may be amended or supplemented since, to the extent that any such amendment or supplement is automatically applicable to the Bankruptcy Case by operation of law and not by operation of any election or choice.

10.   "**Bankruptcy Court**" or "**Court**" means the United States Bankruptcy Court for the Eastern District of Texas, Plano Division, or if such court ceases to exercise jurisdiction, the court of adjunct thereof that exercises jurisdiction over the Bankruptcy Case.

11.   "**Bankruptcy Rules**" means the Federal Rules of Bankruptcy Procedure, together with the local bankruptcy rules for the Bankruptcy Court as now in effect or as the same may from time-to-time hereafter be amended.

12.   "**Bar Date**" means October 28, 2024, for Claims of persons other than Governmental Units, and February 18, 2025 for Claims of Governmental Units.

13.   "**Business Day**" any day which is not a Saturday, a Sunday, or a "legal holiday" within the meaning of Bankruptcy Rule 9006(a).

14.   "**Causes of Action**" means all claims and causes of action of the Debtor or the Estate against any person that arose, accrued, existed, or could have been asserted prior to the Effective Date. Causes of Action shall also include the Avoidance Actions.

15.   "**Claim**" means a claim against the Debtor, the Estate, and/or property of the Debtor or its Estate, as such term is otherwise defined in Bankruptcy Code section 101(5), and arising at any time prior to the Effective Date, including first arising after the Petition Date, regardless of whether the same would otherwise be a claim under Bankruptcy Code section 101(5).

16.   "**Claimant**" means the holder of a Claim.

17.   "**Claims Objection Deadline**" means the date by which parties authorized by the Plan may file any objection to any Claim, including Administrative Expense Claims, which date shall be thirty (30) days following the Administrative Claims Bar Date.  If such date falls on a Saturday or Sunay, the deadline shall be the following Monday.

18.   "**Class**" means one of the categories of Claims and Equity Interests established under Article II of this Plan.

19.   "**Confirmation Date**" means the date on which the clerk of the Bankruptcy Court enters the Confirmation Order on its docket.

20.   "**Confirmation Hearing**" means the hearing(s) before the Bankruptcy Court pursuant to section 1128 of the Bankruptcy Code to consider confirmation of this Plan, as such hearing(s) may be continued, rescheduled, or delayed. The continued Confirmation Hearing is currently set for June 24, 2025 at 9:30 a.m. Central Time.

21.   "**Confirmation Order**" means the order of the Bankruptcy Court confirming this Plan pursuant to section 1129 of the Bankruptcy Code, as such order may be amended, modified, or supplemented.

22.   "**Creditor**" means any holder of a Claim against the Debtor.

23.   "**Debtor**" means Macadamia Beauty, LLC.

24.   "**Disallowed Claim**" means, as it relates to any type of Claim provided for under this Plan, except an Administrative Claim or a Professional Claim, a Claim or portion thereof that: (i) has been disallowed by Final Order of the Bankruptcy Court; (ii) is identified in the Schedules in an amount of zero dollars, unknown dollars, or as contingent, unliquidated, and/or disputed, and as to which a proof of Claim was not filed by the applicable Bar Date; or (iii) is not identified in the Schedules and as to which no proof of Claim has been filed or deemed filed by the applicable Bar Date, if the filing of such proof of Claim is otherwise required.

25.     "**Disbursing Agent**" means the Liquidating Debtor or in the event of a confirmation under Bankruptcy Code section 1191(b) means the Liquidating Debtor or other entity or person as the Court mandates.

26.     "**Disputed Claim**" means any Claim that is not yet Allowed.

27.     "**Effective Date**" means the first Business Day after entry of the Confirmation Date if the Confirmation Order is not stayed; or, if the Confirmation Order is stayed, the first Business Day following the lifting, dissolution, or removal of such stay, and upon which the conditions to the effectiveness of the Plan set forth in Article VIII hereof are satisfied.

28.     "**Equity Interests**" means all stock, share, or other securities, if any, evidencing any ownership of any equity or ownership interest of the Debtor.

29.     "**Estate**" means the estate created for the Debtor pursuant to Bankruptcy Code section 541 and any other applicable provision thereof.

30.     "**Excluded Assets**" means any asset of the Estate not purchased by the Prevailing Bidder as part of the Estate.

31.     "**Executory Contract**" means collectively, "executory contracts" and "unexpired leases" of the Debtor as of the Petition Date as such terms are used within Bankruptcy Code section 365, except to the extent rejected on or prior to the Confirmation Date by the Debtor.

32.     "**Final Decree**" means the final decree entered by the Bankruptcy Court on or after the Effective Date pursuant to Bankruptcy Rule 3022.

33.     "**Final Order**" means a judgment, order, ruling, or other decree issued and entered by the Bankruptcy Court or by any state or other federal court or other tribunal having jurisdiction over the subject matter thereof, which judgment, order, ruling, or other decree has not been reversed, stayed, modified, or amended and as to which: (i) the time to appeal or petition for review, rehearing, or certiorari has expired and as to which no appeal or petition for review, rehearing, or certiorari is pending; or (ii) any appeal or petition for review, rehearing, or certiorari has been finally decided and no further appeal or petition for review, rehearing, or certiorari can be taken or granted.

34.     "**Governmental Unit**" means a governmental unit as such term is defined in Bankruptcy Code section 101(27).

35.     "**Insider**" has the definition set forth in Bankruptcy Code section 101(31).

36.     "**Liquidating Debtor**" means the entity that shall succeed the Debtor post-closing after a Sale, and that will manage the liquidation of any Excluded Assets, including the prosecution or settlement of any claims or causes of action that qualify as Excluded Assets, and also manage the distribution of any proceeds to creditors in accordance with this Plan. The initial officer of the Liquidating Debtor will be Henry W. Stein, the Debtor's current CEO.

37.    "**Liquidation Analysis**" means the analysis required by Bankruptcy Code section 1190(1)(B) showing the Debtor's estimation of recovery to Creditors in the event of a liquidation of the Debtor's Estate.

38.    "**Person**" means and includes natural persons, corporations, limited partnerships, general partnerships, joint ventures, trusts, land trusts, business trusts, unincorporated organizations, or other legal entities, irrespective of whether they are governments, agencies, or political subdivisions thereof.

39.    "**Petition Date**" means August 19, 2024.

40.    "**Plan**" means this *Debtor's Second Amended Subchapter V Plan of Reorganization*, either in its present form or as it may be altered, amended, or modified from time to time.

41.    "**Plan Projections**" means the financial projections supporting the feasibility of the Plan as required under Bankruptcy Code section 1190(1)(C).

42.    "**Priority Claim**" means any Claim entitled to priority in payment under section 507(a) of the Bankruptcy Code, excluding any Claim that is an Administrative Claim or that is a Secured Tax Claim.

43.    "**Professional**" means any Person employed or to be compensated pursuant to sections 327, 328, 330, 331, or 1103 of the Bankruptcy Code.

44.    "**Professional Claim**" means a Claim by a Professional for compensation and/or reimbursement of expenses pursuant to sections 327, 328, 330, 331, or 1103 of the Bankruptcy Code in connection with an application made to the Bankruptcy Court.

45.    "**Purchased Assets**" means any asset of the Estate that is not an Excluded Asset, or as set forth more particularly in the APA.

46.    "**Rejection Damages Claim**" means the Claim in favor of a counterparty to an Executory Contract that is rejected by the Debtor pursuant to Bankruptcy Code section 365 but that is not an Administrative Claim.

47.    "**Rosenthal**" means Rosenthal & Rosenthal of California, Inc.

48.    "**Rosenthal Secured Claim**" means the prepetition secured claim of Rosenthal & Rosenthal of California, Inc., Proof of Claim No. 17.

49.    "**Sale**" means the implementation of a sale of substantially all of the Debtor's assets in accordance with this Plan and the Court's orders.

**Debtor's Second Amended Subchapter V Plan of Reorganization**

50.    **"Sale Proceeds"** means the proceeds received from the Sale of substantially all of the Debtor's assets.

51.    **"Schedules"** means the Schedules of Assets and Liabilities filed by the Debtor in the Bankruptcy Case, as they have been or may be amended and supplemented from time to time in accordance with Bankruptcy Rule 1009.

52.    **"Secured Claim"** means an Allowed Claim secured by a lien, security interest, or other encumbrance on property owned by the Debtor, which lien, security interest, or other encumbrance has been properly perfected as required by law, to the extent of the value of the property encumbered thereby.  That portion of such Claim exceeding the value of the security held thereunder shall be an Unsecured Claim, as defined herein and determined pursuant to Bankruptcy Code section 506(a).

53.    **"Secured Tax Claim"** means a Claim of a Governmental Unit for the payment of ad valorem real property and business personal property taxes that is secured by property of the Debtor or the Estate arising prior to the Petition Date.

54.    **"Subchapter V Trustee"** means that person appointed in this Bankruptcy Case under Bankruptcy Code section 1183.

55.    **"Substantial Consummation"** means the date on which any of the following first happens (i) the date upon which the Liquidating Debtor's payments to creditors commence in accordance with the Plan terms; or (ii) the Bankruptcy Court otherwise finds that substantial consummation within the meaning and operation of the Bankruptcy Code has occurred.

56.    **"Unsecured Claim"** means any alleged Claim against the Debtor that is not secured by (or to the extent not secured by) a valid, enforceable, and unavoidable lien against any asset of the Debtor or the Estate, including any deficiency claim, which does not enjoy any administrative or priority status under the Bankruptcy Code.

57.    **"Voyant"** means Aware Products, LLC d/b/a Voyant Beauty.

## ARTICLE II
## CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS

2.1    <u>Classification Generally</u>.  All Claims and Equity Interests, except Administrative Claims and Administrative Tax Claims, are placed in Classes under the Plan.  A Claim is classified within a Class only to the extent that the Claim qualifies under the description of that Class.  A Claim that is properly includable in more than one Class is only entitled to inclusion within a particular Class to the extent that it qualifies under the description of such Class and shall be included within a different Class(es) to the extent that it qualifies under the description of such different Class(es).

2.2.    <u>Unclassified Claims</u>. The following types of Claims are not classified under the Plan: (i) Administrative Claims and (ii) Administrative Tax Claims.

**DEBTOR'S SECOND AMENDED SUBCHAPTER V PLAN OF REORGANIZATION**

2.3   <u>Classified Claims and Interests</u>. Claims and Equity Interests are classified under the Plan as follows:

Class 1:      Priority Claims (Unimpaired)
Class 2:      Secured and Priority Tax Claims (Unimpaired)
Class 3:      Rosenthal Secured Claim (Impaired)
Class 4:      Other Secured Claims (Unimpaired)
Class 5:      Unsecured Claims (Impaired)
Class 6:      Equity Interests (Impaired and Deemed Rejected)

## ARTICLE III
## PROVISIONS FOR THE TREAMTENT OF UNCLASSIFIED CLAIMS

3.1   <u>Administrative Claim Applications and Deadline</u>. Holders of Administrative Claims, including Professional Claims, other than: (a) Allowed Administrative Claims as of the Effective Date; (b) Administrative Claims that constitute fees or charges assessed against the Estate under Chapter 123, Title 28, United States Code; and (c) Administrative Claims for which the Bankruptcy Court has set a different filing deadline, must by no later than the Administrative Claims Bar Date: (x) file an application with the Bankruptcy Court for allowance of the Administrative Claim; and (y) serve a copy of such application on the Debtor, the United States Trustee, and all other parties otherwise entitled to notice thereof.  Failure to file and serve such application by the Administrative Claims Bar Date shall result in the Administrative Claim being forever barred and discharged as against the Debtor, the Estate, and the property of any of the foregoing, including property transferred pursuant to the Plan.  Except as specifically provided in this Plan, nothing in this Plan alters the law applicable to, and governing, the allowance of Administrative Claims (including Professional Claims) under the Bankruptcy Code.

3.2   <u>Treatment of Allowed Administrative Claims</u>. With the exception of the Allowed Administrative Claims set forth below, and except with respect to Administrative Tax Claims and unless previously paid, each holder of an Allowed Administrative Claim shall be paid in full satisfaction, release, and discharge of, and in exchange for such Allowed Administrative Claim, the amount of such Allowed Administrative Claim by the Debtor, in cash, and without interest, attorney's fees (except as Allowed by the Bankruptcy Court), or costs, no later than ten (10) Business Days following the Administrative Claims Objection Deadline, or the date that an order is entered approving the Allowed Administrative Claim.

Voyant has filed a Proof of Claim in the total amount of $1,888,636.37 [Claim No. 15]. Voyant asserts that a portion of that claim is entitled to be treated as an administrative expense claim under Bankruptcy Code section 503(b)(9) in the amount of $368,737.80.[1] When the Debtor successfully closes on the Sale, the Voyant Administrative Expense Claim shall be paid in full within thirty (30) days of closing. The remaining Voyant Claim will be treated as Class 5 general unsecured claim.

---

[1] Voyant also asserts that certain of its claim is secured pursuant to an alleged right of setoff.  However, the Debtor is unaware of any right of setoff or other right that would entitle the remainder of Voyant's claim to have secured claim treatment.

**D**EBTOR'S **S**ECOND **A**MENDED **S**UBCHAPTER **V** **P**LAN OF **R**EORGANIZATION

The Allowed Administrative Claim of RSB for fees and expenses will be paid in full within thirty (30) days of the Sale closing.

3.3     Administrative Tax Claims. Administrative Tax Claims, and any liens securing the same, are not affected, prejudiced, discharged, or treated by this Plan and shall survive this Plan without need for any action on the part of the holder thereof. Administrative Tax Claims, and the liens securing the same, shall be paid when and as otherwise appropriate, together with such interest and other charges as otherwise appropriate, as soon as possible after the Effective Date or when the same otherwise become due and payable. Notwithstanding anything contained in this Plan to the contrary, nothing in this Plan transfers or vests any property of the Debtor or the Estate free and clear of any lien securing an Administrative Tax Claim. All rights to contest any Administrative Tax Claim, including as may be appropriate under Bankruptcy Code section 505, are preserved and vest in the Liquidating Debtor as of the Effective Date.

**ARTICLE IV**
**PROVISIONS FOR THE TREATMENT OF CLASSIFIED CLAIMS**

4.1     Class 1: Priority Claims. In full and final satisfaction, release, and exchange of each Priority Claim, each Priority Claim, to the extent Allowed, shall be paid by the Liquidating Debtor no later than fourteen (14) days after the Claims Objection Deadline, if no objection is then pending, or fourteen (14) days after the Priority Claim becomes Allowed by Final Order. Class 1 is not impaired under this Plan.

4.2     Class 2: Secured Tax Claims. Secured Tax Claims, to the extent Allowed, shall be paid by the Liquidating Debtor, together with all applicable interest both after the Petition Date and after the Effective Date as provided for under applicable law, as is otherwise appropriate under applicable law or, if defaulted on by the Effective Date, within fourteen (14) days thereafter in cash. All liens securing any Secured Tax Claim shall remain in place with the same validity, extent, and priority as otherwise exists under applicable law and shall remain attached to all property of the Debtor, the Estate, or the Liquidating Debtor, including any inchoate lien, notwithstanding anything contained in this Plan.

4.3     Class 3: Rosenthal Secured Claim. Class 3 shall consist of the Allowed Secured Claim of Rosenthal. The Debtor and Rosenthal are seeking Court approval of the proposed settlement as set forth *supra*.

The Rosenthal Allowed Secured Claim, as reduced in the proposed settlement, shall be paid in full from the Sale Proceeds upon the Effective Date or Sale Closing Date, as applicable.

Class 3 is impaired.

4.4     Class 4: Other Secured Claims. Class 4 (Other Secured Claims) includes all claimants who have asserted a lien on the Debtor's assets other than Rosenthal.

The Debtor is and has remained current on the Other Secured Claims.

All allowed claims of Other Secured Claimants will be paid in full within thirty (30) days of Sale closing.

Class 4 is unimpaired.

4.5    Class 5: General Unsecured Claims. Allowed General Unsecured Claims are impaired and shall be satisfied as follows:

The Allowed Unsecured Claims shall receive a pro rata distribution of whatever Sale Proceeds are remaining after the payment of Allowed Administrative Claims, Liquidating expenses and Classes 1-4, the "Unsecured Payment Proceeds".  The Unsecured Payment Proceeds will be distributed within thirty (30) days of Sale closing or fourteen (14) days from the Claim Objection deadline, if no objection is then pending, or fourteen (14) days after the General Unsecured Claim becomes Allowed by Final Order, whichever is later. Allowed General Unsecured Claims are also entitled to a pro-rata distribution from proceeds of any causes of action retained by the Liquidating Debtor.    Such litigation proceeds are distributable within thirty (30) days of such litigation becoming final.

Class 5 is impaired.

4.7    Class 6: Equity Interests. Upon Sale closing, no Equity Interests shall remain, and such Equity Interests shall be cancelled and terminated. Unless all other classes and creditors are paid in full, it is not anticipated that any payments will be received by any equity interest holder on behalf of their equity interests. Class 6 is impaired under the Plan, but deemed to reject as it is not receiving a distribution under the Plan.

## ARTICLE V
## VOTING ON THE PLAN

Any creditor whose Claim is impaired and in a class receiving a distribution under the Plan is entitled to vote to accept or reject the Plan to the extent that such Claim is Allowed as of February 28, 2025. Creditors and other parties in interest are to be sent a "Solicitation Package" containing a copy of this Plan, any Bankruptcy Court order setting a hearing on Plan confirmation, and a ballot. Each creditor entitled to vote on the Plan shall be sent a ballot indicating the specific class containing their claim. All other parties shall receive a generic form ballot (indicating no particular class) for notice purposes only. The Solicitation Package will contain information on how and where to return a ballot in order to be counted.

## ARTICLE VI
## PLAN IMPLEMENTATION: SALE

### A.  SALE OF SUBSTANTIALLY ALL OF DEBTOR'S ASSETS

The implementation of the Plan requires consummation of a sale of substantially all of the Debtor's assets (the "Sale").

DEBTOR'S SECOND AMENDED SUBCHAPTER V PLAN OF REORGANIZATION

On the sooner of the Effective Date or the Sale closing, subject to the terms, conditions and provisions in the APA, the Debtor shall sell, transfer and convey the Purchased Assets to the Prevailing Bidder and the parties shall otherwise close the transactions contemplated by the APA. In consideration for the sale, transfer and delivery of the Purchased Assets, on the Closing Date, the Prevailing Bidder shall deliver to the Debtor the Sale Proceeds for use and distribution in accordance with this Plan. The terms, provisions and conditions of the APA shall govern the obligations of the Prevailing Bidder and the Debtor thereunder.  To the extent inconsistent with the Plan, the provisions of the APA shall govern.

Upon the Closing Date, the Purchased Assets shall be transferred to the Prevailing Bidder, pursuant to sections 363(b) and (f) of the Bankruptcy Code, free and clear of all liens, claims and encumbrances, with all such liens, claims and encumbrances being addressed by this Plan and attached to the Sale Proceeds, with the same validity, priority and enforceability as existed prior to such Sale, and the Sale Proceeds shall be distributed in accordance with the terms of the Plan.

Following Sale closing, and after the payment of Allowed Claims under Classes 1-4 and the payment of approved administrative expense claims, the Liquidating Debtor shall be permitted to utilize Sale Proceeds to carry out its duties under this Plan, including filing claim objections.

## ARTICLE VII
## SUBCHAPTER V REQUIREMENTS SATISFIED

The Debtor submits that the Plan provides the necessary content required by Bankruptcy Code section 1190 and is confirmable under section 1191 because: (i) pursuant to the terms of this Plan, Holders of Allowed Claims will not receive less than they would in a hypothetical Chapter 7 liquidation; (ii) the Plan is "fair and equitable" within the meaning of section 1191(c) of the Bankruptcy Code; and (iii) the Plan is feasible as the Plan Projections demonstrate that the Liquidating Debtor will be able to make the distributions contemplated under the Plan or there is a reasonable likelihood that the Liquidating Debtor will be able to make the distributions contemplated under the Plan, as required by Bankruptcy Code section 1191(c)(3)(A)(i) and (ii).

Furthermore, pursuant to Bankruptcy Code section 1190(1)(B), attached to the Plan as **Exhibit B** is a true and correct copy of the Liquidation Analysis of the Debtor. The Plan is in the best interest of Creditors.

## ARTICLE VIII
## CLAIMS OBJECTION PROCESS

8.1    <u>Claims Bar Date</u>. The Bar Date for all creditors or interest holders, other than Governmental Units, to file proofs of claim with the Bankruptcy Clerk was October 28, 2024, for Claims against the Debtor. The Bar Date for Governmental Units to file Proof of Claims with the Bankruptcy Clerk is February 18, 2025.

8.2    <u>Effect of Bar Date</u>. In accordance with Bankruptcy Rule 3003(c), any entity, Person or Creditor whose Claim was listed in the Schedules and listed as contingent, unliquidated or disputed, or otherwise holds a Claim, and did not file a proof of Claim before the applicable Bar

Date, shall not be treated as a Creditor with respect to such Claim for purposes of voting or distribution.

8.3    Standing. Following the Effective Date, the Liquidating Debtor, or any party in interest shall have standing to object to Claims.

8.4    Claim Objection Deadline. Within sixty (60) days from the Effective Date, unless such date is extended by Order of the Bankruptcy Court after notice and hearing, the Liquidating Debtor or any party in interest may file with the Bankruptcy Court objections to Claims and shall serve a copy of each such objection upon the holder of the Claim to which such objection pertains. Unless arising from an Avoidance Action, any Proof of Claim Filed after the Effective Date shall be of no force and effect and need not be objected to. Any Disputed Claim may be litigated to Final Order. The Liquidating Debtor may compromise and settle any Disputed Claim without the necessity of any further notice or approval of the Bankruptcy Court, and Bankruptcy Rule 9019 shall not apply to any settlement of a Disputed Claim after the Effective Date.

The Liquidating Debtor shall reasonably consult with Voyant regarding any Disputed Claim asserted in an amount over $200,000 which the Liquidating Debtor proposes to (i) allow as an Allowed Claim in the full amount asserted, or (ii) compromise or settle as an Allowed Claim in an amount over $100,000, and in both cases, Voyant shall have standing to be heard and/or to raise issues, concerns or objections with regard to the reasonableness of such allowance or settlement.

8.5    Allowance of Claims. After the Effective Date, to the extent that a Disputed Claim becomes an Allowed Claim, such Allowed Claim shall be entitled to distributions under the Plan. Such Distributions shall be made in the manner provided for by this Plan, or any Final Order of the Bankruptcy Court with respect to such Allowed Claim.

## ARTICLE IX
## EFFECT OF CONFIRMATION AND PLAN INJUNCTION

9.1    Effective Date and Notice. The Effective Date of the Plan is the first business day following the date that the Confirmation Order becomes a Final Order; provided however, if an appeal of the order confirming the Plan has been taken and a stay of confirmation pending appeal in effect, the Effective Date will be the first business day after the date on which the stay expires or is otherwise terminated. On or before ten (10) Business Days after the occurrence of the Effective Date, the Debtor shall mail or cause to be mailed to all holders of Claims and Equity Interests a notice that informs such holders of the following: (a) entry of the Confirmation Order; (b) occurrence of the Effective Date; and (c) such other matters that the Debtor deems appropriate.

9.2    Binding Effect of Plan. Upon the Effective Date, the Plan and each of its provisions shall be binding on the Liquidating Debtor, all Creditors, all Equity Interest holders, and the Prevailing Bidder, whether or not they voted to accept the Plan, whether or not they had a right to vote on the Plan, whether or not any Claim or Equity Interest held by any of them is Impaired under the Plan, whether or not any Claim or Equity Interest held by any of them is Allowed in full, only in part, or Disallowed in full, and whether or not a Distribution is made to any of them under the Plan. This provision includes all successors and assigns of the parties named herein.

**DEBTOR'S SECOND AMENDED SUBCHAPTER V PLAN OF REORGANIZATION**

9.3     Vesting of Assets Upon the Closing of the Sale.
Upon the closing of the Sale, and except as otherwise provided in this Plan, all Purchased Assets purchased in the sale under the APA shall become property of the Prevailing Bidder.  Upon the Effective Date, or the closing of the Sale, whichever is sooner, all Excluded Assets shall vest in the Liquidating Debtor and shall be held in trust by the Liquidating Debtor to be utilized in conformance with and to make payments and/or distributions pursuant to the terms of the Plan, as well as carry out the Liquidating Debtor's duties under the Plan.

9.4     Discharge.

9.4.1.   Consensual Plan. A consensual plan is one in which the debtor has met all requirements of Bankruptcy Code section 1129(a) except for paragraph (15), but including having all classes of creditors entitled to vote to accept the plan. Pursuant to section 1141(d)(3), consensual confirmation of this Plan will not discharge the Debtor from any debts or Claims unpaid under the Plan. .

9.4.2.   Non-Consensual Plan. A non-consensual plan is one in which the debtor has met all requirements of Bankruptcy Code section 1129(a) except for paragraphs (8), (10), and (15) of section 1129. In the event all impaired classes of creditors do not vote in favor of the Plan, the Debtor will seek Court confirmation of the Plan pursuant to Bankruptcy Code section 1191(b). Pursuant to section 1141(d)(3), non-consensual confirmation of this Plan will not discharge the Debtor from any debts or Claims unpaid under the Plan.

9.5     Plan Injunction. Upon the Effective Date, all holders of Claims, all holders of Equity Interests, and all other parties in interest in the Bankruptcy Case, along with their respective current and former officers, directors, principals, employees and agents, shall be and are hereby enjoined  from taking any action to interfere with the implementation or consummation of the Plan. Additionally, all holders of Claims, all holders of Equity Interests, and all other parties in interest in the Bankruptcy Case shall be enjoined from  seeking payment on their Claims or Interest except as otherwise provided in the Plan from the Liquidating Debtor.

9.6     Payments Under the Plan. Regardless of whether the Debtor obtains confirmation of the Plan pursuant to Bankruptcy Code sections 1191(a) or (b), the Liquidating Debtor shall make all payments on Allowed Claims required under the Plan directly to the Creditors holding such Allowed Claims. The Liquidating Debtor asserts that cause exists to allow the Liquidating Debtor to make all Plan payments as this will reduce administrative costs.

9.7     Sale. The Debtor acknowledges that it will not be entitled to discharge pursuant to section 1141(d)(3) if it consummates a sale of substantially all the property of the estate or does not engage in business after confirmation of the Plan.

## ARTICLE X
## EXECUTORY CONTRACTS AND LEASES

All Executory Contracts not rejected by order of the Court or not otherwise assumed in connection with the Sale as of the Effective Date shall be deemed rejected.

## ARTICLE XI
## PLAN FEASIBILITY

The projected payment waterfall to creditors from Sale Proceeds is attached to this Plan as **Exhibit A**. Upon closing of the Sale, the Debtor believes the Plan to be feasible.

## ARTICLE XII
## ALTERNATIVES TO THE PLAN AND PLAN RISKS

If the Plan is not confirmed, the Bankruptcy Case may be converted to a case under Chapter 7 of the Code, in which case a trustee would be appointed to liquidate the assets of the Debtor for distribution to its Creditors in accordance with the priorities of the Code. The sale might be challenged. The cash received under the sale might be jeopardized. The buyers might seek recovery of some amounts of their payment.

Consequently a chapter 7 liquidation would yield a substantially lower amount of recovery to Creditors than the proposed Sale. This is shown in the Liquidation Analysis attached to this Plan as **Exhibit B**.

Claimants and Equity Interest Holders should be aware that there are a number of substantial risks involved in consummation of the Plan. There are risks inherent in sale transactions, especially in unsteady economic times. The Debtor has sought to mitigate these risks by obtaining proof of funds from the Prevailing Bidder and moving expeditiously towards Sale closing.

## ARTICLE XIII
## EVENTS OF DEFAULT AND EFFECTS THEREOF

Any creditor remedies related to material defaults under the confirmed Plan and allowed by Bankruptcy Code section 1112(b)(4)(N) shall be preserved to the extent otherwise available at law. In addition to any rights specifically provided to a claimant treated pursuant to this Plan, a failure by the Liquidating Debtor to make a payment to a creditor pursuant to the terms of this Plan shall be an event of default as to such payments, if the payment not cured within ten (10) days after mailing written notice of default from such creditor. Any default notice, inquiry, or other formal communication pursuant to the Plan shall be mailed by certified mail, return receipt requested to the following:

Macadamia Beauty, LLC
Attn: Henry Stein
17 Hancock Rd.
Brookline, MA 02445
Email: hwstein@spncap.com

**DEBTOR'S SECOND AMENDED SUBCHAPTER V PLAN OF REORGANIZATION**

21

With a copy to:
Vickie L. Driver
ELLIOTT, THOMASON & GIBSON, LLP
511 N. Akard, Suite 202
Dallas, TX 75201
Email: vickie@etglaw.com

The Liquidating Debtor will be entitled to two (2) notices of default during the term of the Plan from any creditor. Upon a third default to that creditor, the Plan injunction as to that creditor shall be automatically terminated without further notice or order from the Court.

## ARTICLE XIV
## DISCHARGE

14.1    No Discharge Upon Confirmation. Pursuant to section 1141(d)(3), confirmation of this Plan will not discharge the Debtor from any debts or Claims unpaid under the Plan.

14.2    Estate Release of Certain Claims: Except as specifically provided for herein, on and after the Effective Date, and without the need for further action, the Plan and Confirmation Order shall constitute a release and discharge of all actions, causes of action, claims, suits, debts, damages, judgments, liabilities, and demands whatsoever, whether matured or unmatured, whether at law or in equity, whether before a local, state, or federal court, state or federal administrative agency or commission, regardless of location and whether now known or unknown, liquidated or unliquidated, that the Debtor or the Estate may have or be able to assert against (i) RSB, its attorneys, employees, officers, agents, and shareholders; (ii) ETG, its attorneys, employees, officers, agents, and shareholders and (iii) any director, officer, manager, or fiduciary of the Debtor, in each case solely for any actions or inactions taken by any of the foregoing in, or arising against the foregoing as a result of, the Bankruptcy Case or the Plan, including with respect to the negotiation, execution, and delivery of any document or instrument in connection with the Plan; *provided, however*, that nothing in this Plan releases any claim against any of the foregoing for gross negligence or intentional acts.  This Plan further does not release any claims or causes of action the Estate has against MNO Investor Holdings, LLC, Irving Place Capital Management, L.P., and any directors or officers of either entity.  The foregoing does not affect, prejudice, or release any claim or cause of action that any Person may have against any of the foregoing that is personal to such Person and is not a claim of the Estate.  Nothing in this Plan, and nothing in the foregoing, waives any objection or other issue related to any Professional Claim.

## ARTICLE XV
## TAX CONSEQUENCES

Implementation of the Plan may result in federal income tax consequences to holders of Claims, Equity Interest Holders, and the Liquidating Debtor. In this case, most of the general unsecured creditors will not be paid in full the amount of their Claims. Tax consequences to a particular Creditor or Equity Interest Holder may depend on the circumstances or facts regarding the Claim of the Creditor or the interests of the Equity Interest Holder. **CLAIMANTS ARE URGED TO CONSULT THEIR OWN TAX ADVISOR AS TO THE**

CONSEQUENCES OF THE PLAN TO THEM UNDER FEDERAL AND APPLICABLE
STATE AND LOCAL TAX LAWS.

ARTICLE XVI
MISCELLANEOUS PROVISIONS

16.1   <u>Automatic Stay</u>. The automatic stay imposed by Bankruptcy Code section 362(a) or any preliminary injunction granted by the Court to allow for Substantial Consummation of this Plan shall remain in effect until the Effective Date, at which time the injunction provisions of this Plan and the Bankruptcy Code shall control.

16.2   <u>Retention and Preservation of the Debtor's Rights and Causes of Action</u>. Notwithstanding the confirmation of the Plan and the entry of the Confirmation Order, and notwithstanding any principle of res judicata or otherwise, and unless specifically and explicitly released, waived, compromised, or otherwise treated in this Plan, the Liquidating Debtor (as applicable) shall retain any and all rights, property, and interests of the Debtor and its Estate, regardless of whether they are scheduled, filed, or asserted prior to the Confirmation Hearing, including, without limitation, all: (i) defenses to Claims; (ii) affirmative defenses to Claims; (iii) setoffs and recoupments against any Claim, Creditor, or other person; (iv) rights to turnover, accounting contribution, indemnification, or reimbursement against any Creditor or other person; (v) rights under any loan document modified by this Plan, but only as so modified; (vi) rights to any tax refund belonging to the Debtor; and (vii) claims and Causes of Action against any Creditor or Person whatsoever, including for affirmative relief and to reduce any liability. Moreover, the Liquidating Debtor specifically reserves and retains any and all Causes of Action belonging to the Debtor, which shall in no way be extinguished, released, or prejudiced as a result of the confirmation of this Plan.

The reservation of causes of action includes, without limitation, any cause of action under law or in equity against MNO Investor Holdings, LLC, Irving Place Capital Management, L.P., and any directors or officers of either entity, or any claims reserved in the Debtor's schedules. Upon Court approval of the proposed settlement with Rosenthal, all claims of the Estate against Rosenthal will be released as set forth *supra*.

16.3   <u>Unclaimed Property</u>. If any property to be distributed on account of this Plan remains unclaimed for a period of one (1) year after it has been delivered (or delivery has been attempted) or has otherwise been made available, such unclaimed property shall be forfeited by the Person entitled to receive the property and the unclaimed property and the right to receive it shall revert to and vest in the Liquidating Debtor.

16.4   <u>Binding Effect</u>. This Plan shall be binding on and inure to the benefit of the holders of Claims (whether or not they have accepted the Plan) and their respective personal representatives, successors and assigns, and all parties-in-interest, as provided for by the Bankruptcy Code.

16.5   <u>Retention of Jurisdiction</u>. Following the Effective Date, and notwithstanding the entry of the Confirmation Order, the Bankruptcy Court (including, as appropriate, any District

DEBTOR'S SECOND AMENDED SUBCHAPTER V PLAN OF REORGANIZATION

23

Court with jurisdiction over the Bankruptcy Court) shall retain jurisdiction of the Bankruptcy Case and all matters arising in, or related to, the Bankruptcy Case to the fullest extent permitted by law.

16.6    <u>Provisions Regarding Texas Comptroller of Public Accounts</u>.

(a) Notwithstanding anything in the Plan to the contrary, the Plan shall not release or discharge any entity, other than the Debtor (or Liquidating Debtor), from any liability owed to the Texas Comptroller of Public Accounts for a tax debt, including interest and penalties on such tax.  This provision is not admission by any party that such liability exists.

(b) Notwithstanding anything in the Plan to the contrary, the Plan shall not limit the Comptroller's setoff rights under 11 U.S.C. § 553.  This provision is not admission by any party that such setoff rights exist.

(c) A failure by the Liquidating Debtor to make a payment to the Texas Comptroller pursuant to the terms of the Plan shall be an Event of Default.  If the Liquidating Debtor fails to cure an Event of Default as to tax payments within ten (10) calendar days after service of written notice of default from the Texas Comptroller, the Texas Comptroller may (a) enforce the entire amount of its claim, (b) exercise all rights and remedies under applicable nonbankruptcy law, and (c) seek such relief as may be appropriate in this court.  Notice of the default shall be served by first class mail upon counsel for the Liquidating Debtor. The Liquidating Debtor shall be allowed to cure up to two (2) defaults.  Upon a third default, the Comptroller, at its option, may declare the default non-curable and proceed to collect the remainder of the debt.

Dated: May 23, 2025.                    Respectfully submitted,

                                        MACADAMIA BEAUTY, LLC


                                        /s/ Henry Stein
                                          Henry Stein, CEO



Prepared by:


/s/ Christina W. Stephenson
Vickie L. Driver
State Bar No. 24026886
Christina W. Stephenson
State Bar No. 24049535
**ELLIOTT, THOMASON & GIBSON, LLP**
511 N. Akard, Suite 202
Dallas, TX 75201
Telephone: 214-390-2086
Facsimile:  214-506-1129
Email: vickie@etglaw.com
Email: crissie@etglaw.com

**COUNSEL FOR THE DEBTOR
AND DEBTOR-IN-POSSESSION**

# EXHIBIT A

Case 24-41929   Doc 198-1   Filed 05/23/25   Entered 05/23/25 15:39:10   Desc Exhibit

Projected Waterfall
Plan - Waterfall

| | | |
|---|---|---|
| 0 | Sections 3.1 - 3.3 | Administrative Claims |
| 1 | Section 4.1 | Priority Claims (Unimpaired) |
| 2 | Section 4.2 | Secured Tax Claims |
| 3 | Section 4.3 | Rosenthal Secured Claim (Impaired) |
| 4 | Section 4.4 | Other Secured Claims (Unimpaired) |
| 5 | Section 4.5 | General Unsecured Claims (Impaired) |

| | | High | Low |
|---|---|---|---|
| | Sale Consideration | 3,205,000 | |
| (1) | Wind up costs | 125,000 | 125,000 |
| 0 | Legal | 582,000 | 472,000 |
| 1 | Class 1 Priority | 459,970 | 459,970 |
| 2 | Class 2 Secured Tax | 78,262 | 78,262 |
| 3 | Class 3 Rosenthal | 775,000 | 415,117 |
| 4 | Class 4 Other Secured | 9,005 | 9,005 |
| 5 | Class 5 Unsecured | 19,280,124 | 2,174,235 |
| | *$ Avail for Class 5 Claims* | *1,175,763* | *1,645,646* |
| | Class 4 and higher recovery | 100.00% | 100.00% |
| | Unsecured Recovery Percentage (Cash) | 6.10% | 75.69% |

| | Class | High | Low |
|---|---|---|---|
| (1) | Wind up — Wind Up | 125,000 | 125,000 |
| 0 | ETG - Law — Legal | 350,000 | 300,000 |

1

| Category | # | Name | | |
|---|---|---|---|---|
| Legal | 0 | RS&B - Law | 220,000 | 160,000 |
| Legal | 0 | SubChapter V Trustee | 12,000 | 12,000 |
| Priority non tax | 1 | Voyant 1 | 368,738 | 368,738 |
| Priority non tax | 1 | Andy - 1 | 15,100 | 15,100 |
| Priority non tax | 1 | Chenyun Wang | 2,205 | 2,205 |
| Priority non tax | 1 | Chris | 5,203 | 5,203 |
| Priority non tax | 1 | Danah | 7,198 | 7,198 |
| Priority non tax | 1 | Dorota Kulunski | 4,398 | 4,398 |
| Priority non tax | 1 | Henry Stein - 1 | 15,100 | 15,100 |
| Priority non tax | 1 | Minyi | 4,134 | 4,134 |
| Priority non tax | 1 | Parker | 10,970 | 10,970 |
| Priority non tax | 1 | Phuong Dang - 1 | 11,644 | 11,644 |
| Priority non tax | 1 | Phuong Dang - 2 | 12,285 | 12,285 |
| Priority non tax | 1 | Raquel | 2,994 | 2,994 |
| Taxes | 2 | Forth Worth - 1 | 10,000 | 10,000 |
| Taxes | 2 | TX Comptroller | 2,000 | 2,000 |
| Taxes | 2 | Collin County | 1,000 | 1,000 |
| Taxes | 2 | Eagle Mtn ISD | 19,614 | 19,614 |
| Taxes | 2 | Forth Worth - 2 | 25,770 | 25,770 |
| Taxes | 2 | Plano ISD | 1,002 | 1,002 |
| Taxes | 2 | Tarrant | 18,877 | 18,877 |
| Rosenthal | 3 | Rosenthal Legal | 550,000 | 200,000 |
| Rosenthal | 3 | Rosenthal P&I | 225,000 | 215,117 |
| Other Secured (non Rosenthal) | 4 | Dell Financial | 9,005 | 9,005 |
| Unsecured | 5 | ABY | 140 | 140 |
| Unsecured | 5 | Aeco-Pack | 14,125 | 14,125 |
| Unsecured | 5 | Anastasia | 4,850 | 4,850 |
| Unsecured | 5 | Andy - 2 | 961 | 961 |

Case 24-41929    Doc 198-1    Filed 05/23/25    Entered 05/23/25 15:39:10    Desc Exhibit

Projected Payment Material

| | | | | |
|---|---|---|---|---|
| Unsecured | 5 | AX | 24,798 | 24,798 |
| Unsecured | 5 | BofA | 3,235 | 3,235 |
| Unsecured | 5 | Briddge | 3,475 | 3,475 |
| Unsecured | 5 | Buchalter | 20,483 | 20,483 |
| Unsecured | 5 | Carrington Coleman | 8,083 | 0 |
| Unsecured | 5 | Clear Freight | 24,972 | 20,697 |
| Unsecured | 5 | Clovis Gomis | 1,000 | 1,000 |
| Unsecured | 5 | CosmoProf | 8,328 | 8,328 |
| Unsecured | 5 | Creative Circle | 19,500 | 16,425 |
| Unsecured | 5 | DeKock DHK | 996 | 996 |
| Unsecured | 5 | Deromex | 3,375 | 3,375 |
| Unsecured | 5 | DesignWorx | 39,952 | 39,952 |
| Unsecured | 5 | DKSH North America | 4,431 | 4,431 |
| Unsecured | 5 | Euler Hermes | 13,226 | 0 |
| Unsecured | 5 | FedEx | 1,950 | 1,950 |
| Unsecured | 5 | Henry Stein - 2 | 47,400 | |
| Unsecured | 5 | Henry Stein - 3 | 2,596,695 | |
| Unsecured | 5 | HM Revenue & Customs | 1,846 | 1,846 |
| Unsecured | 5 | Identipak | 20,225 | 20,225 |
| Unsecured | 5 | Ignite | 3,000 | 3,000 |
| Unsecured | 5 | Irving Place Capital | 1,610,000 | |
| Unsecured | 5 | Issa Packaging | 1,343 | 1,343 |
| Unsecured | 5 | Mallory Alexander | 3,080 | 3,080 |
| Unsecured | 5 | McDowell Packaging | 2,764 | 2,764 |
| Unsecured | 5 | Mitali Patel | 200 | 200 |
| Unsecured | 5 | MNO Investor Holdings | 12,487,842 | |
| Unsecured | 5 | MNP LLP | 2,208 | 2,208 |
| Unsecured | 5 | Moss Adams | 97,935 | 97,935 |
| Unsecured | 5 | National Records Centers | 333 | 333 |
| Unsecured | 5 | Naturich Labs | 406,486 | 79,783 |
| Unsecured | 5 | Nova Associates | 520 | |
| Unsecured | 5 | Open Text | 455 | 455 |
| Unsecured | 5 | PDA Group | 116,789 | 116,789 |

Case 24-41929    Doc 198-1    Filed 05/23/25    Entered 05/23/25 15:39:10    Desc Exhibit
Projected Material / Pages 50 of 64

| | | | | |
|---|---|---|---|---|
| Unsecured | 5 | PFI Logistics | 754 | 754 |
| Unsecured | 5 | Principal Life Insurance | 1,201 | |
| Unsecured | 5 | Receiver General Canada | 10,539 | 10,539 |
| Unsecured | 5 | Richardson Kontogouris Emerson | 37,444 | 37,444 |
| Unsecured | 5 | Rubendewit79 | 5,532 | 5,532 |
| Unsecured | 5 | Sarea Consulting | 33,377 | 33,377 |
| Unsecured | 5 | Schneider National Carriers | 13,318 | 13,318 |
| Unsecured | 5 | Share 4PL | 20,131 | 20,131 |
| Unsecured | 5 | Sooner Express | 653 | 653 |
| Unsecured | 5 | Steward Printing & Promo | 6,306 | 6,306 |
| Unsecured | 5 | Tai Wai Distributors | 19,500 | 19,500 |
| Unsecured | 5 | Total Quality Logistics | 7,600 | 7,600 |
| Unsecured | 5 | United Healthcare | 6,423 | |
| Unsecured | 5 | Uprise Marketing | 450 | |
| Unsecured | 5 | Voyant | 1,519,899 | 1,519,899 |
| | | Sum Class 5 Unsecured Claims | 19,280,124 | 2,174,235 |

4

# EXHIBIT B

| | | |
|---|---|---|
| All Purchase | | 3,205,000 |
| Less Holdbac | | (50,000) |
| Net Purchase | | 3,155,000 |
| | | |
| Rosenthal | | (430,000) |
| | | |
| Amount to Disburse | | 2,725,000 |

**Chapter 7 Trustee Commission**: A commission on the funds disbursed from the sale of assets after presumed payment to Rosenthal.
This is $2,725,000

| | | | Amount in this bracket | Chap 7 Trustee Commission |
|---|---|---|---|---|
| Commission is calculated based on a tiered system | | | | |
| •25% of the first $5,000 disbursed. | 25% | | 5,000 | 1,250 |
| •10% of the next $45,000 disbursed | 10% | 50,000 | 45,000 | 4,500 |
| •5% of the next $950,000 disbursed. | 5% | 1,000,000 | 950,000 | 47,500 |
| •3% of anything over $1,000,000 disbursed. | 3% | | 1,725,000 | 51,750 |
| Total Trustee Commission | | | 2,725,000 | 105,000 |
| | | | | |
| Administrative Fee | | | | 60 |
| Total Chapter 7 Trustee Commission & Fee | | | | $105,060 |

**Chapter 11 Approved Plan**

| | |
|---|---|
| HWS Capped fee | 85,000 |
| | |
| Administrative Fee | 60 |
| Total Chapter 11 Commission & Fee | $85,060 |